STATE OF MISSOURI, EX REL. N. C. HUDSON, Respondent, *v.* ACADEMY OF SCIENCE ET AL., Appellants.

13  213
151m241

January 30, 1883.

1. TAXES — CHARITABLE INSTITUTIONS. — A gift designed to promote the public good by the encouragement of learning, science, and the useful arts is a charity, and if it is administered in accordance with such a design is used for charitable purposes and is exempt from taxation.

2. —— EXEMPTIONS — CONSTITUTIONAL LAW. — It was competent for the legislature, under the constitution of 1875, to arrest proceedings to collect taxes imposed after 1875 upon property which the legislature had, under this constitution, exempted from taxation.

3. —— Where the legislature exempts from taxation a class of property and makes no provision for the collection of taxes already assessed against it, such taxes so assessed cannot be collected after the exemption is declared.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Reversed and remanded.*

N. HOLMES and M. L. GRAY, for the appellants: The property was used for "purposes purely charitable" and was exempt from taxation. — Const. 1875, Art. X., sect. 6; Sess. Acts 1872, p. 84, sect. 3; Sess. Acts 1877, p. 393, sect. 1; Rev. Stats., sect. 6659; *The State ex rel.* v. *Powers,* 10 Mo. App. 263; *s. c.* 74 Mo. 476.

M. B. JONAS, for the respondent: The concession made to the Academy of Science, belongs to the class of law denominated *privilegia favorabilia.* — *Rector, etc.,* v. *Philadelphia,* 24 How. 300; *Railroad Co.* v. *Georgia,* 98 U. S. 365; *Washington University* v. *Rowse,* 42 Mo. 325; *s. c.* 75 U. S. 437, 438; *East Hartford* v. *Bridge Co.,* 10 How. 511; *Providence Bank* v. *Billings,* 4 Pet. 561. It is true that, in general, constitutions, like statutes, are to be construed as prospective only; but when a contrary intent is plainly apparent a different construction will prevail. — Cooley on Const. Lim. 62; *The State ex rel.* v. *Holliday,* 66 Mo. 385. We may look to the occasion of the enact-

ment of a law to ascertain if it be retro or prospective. — *The People* v. *Supervisors*, 70 N. Y. 228 ; *The People* v. *Supervisors*, 43 N. Y. 132. That these sections may have a retrospective effect upon a privilege which is repealable, is of no moment, for the constitution of the United States does not prohibit a state from enacting retrospective laws which do not impair the obligation of a contract nor interfere with vested rights. — *Drehman* v. *Stefel*, 41 Mo. 184. So far as " The Missouri Historical Society " is concerned, there is no privilege of exemption from taxation in its charter to be looked into. — *St. Louis* v. *Trust Co.*, 47 Mo. 150. Where an exemption from taxation is claimed, it must not be from presumption ; the intention of the sovereign power to abandon this vital power must appear in clear and unequivocal terms. — *Hannibal, etc., R. Co.* v. *Shacklett*, 30 Mo. 21 ; *Pacific R. Co.* v. *Cass County*, 53 Mo. 17.

BAKEWELL, J. delivered the opinion of the court.

This is an action begun on May 6, 1880, for back taxes. The taxes in question are state, city, and school taxes for the years 1877 and 1878, assessed against a lot in the city of St. Louis.

The answer of the Academy of Science admits that the lot in question is owned by it and by its co-defendant, the Missouri Historical Society, as tenants in common. The answer then sets up two special defences, the first of which is as follows :—

The Academy of Science was incorporated by Act of January 17, 1857 (Sess. Acts, 542), having for its objects the advancement of science and the establishment in St. Louis of a museum and library for the illustration and study of its various branches with perpetual succession for so long as it should answer the purposes of its creation, and was empowered by its charter to acquire, hold, etc., such property, real, etc., as it might deem proper for the purposes aforesaid. The charter provides that the mem-

bers shall acquire no individual property in the real estate or other effects of the corporation, which are declared to be fully vested in the corporation as such, the interest of the members therein to be merely usufructuary. Whenever the corporation shall fail to answer the purposes of its creation, or suffer its charter to be forfeited, its cabinet collection and library shall become vested in the city of St. Louis to be deposited with some public institution of that city for general use. Thus, all the property of the corporation has ever been held and exclusively devoted to the purposes for which the academy was organized. This particular lot was a donation to the two co-defendants by deed of James H. Lucas and wife, dated June 8, 1872, duly recorded, etc., to hold for the purposes of the corporation, and has been ever since exclusively so held.

The second special defence is as follows : —

Besides the facts set out above, before the date of defendant's charter, there was a voluntary association called the Academy of Science of St. Louis, which owned a scientific library and museum acquired by gifts for scientific public purposes, and defendant's charter contained a provision that the property and effects of the association above named should, on acceptance of the charter, vest in the corporation thereby created, and that all property owned or held by the corporation shall be exempt from taxation so long as the same shall continue to be used in good faith for the objects aforesaid ; whenever any real estate of the corporation shall be leased, the leasehold interest to be taxable to the lessee. At a meeting of defendant corporation, on February 9, 1857, this donation was accepted by a unanimous vote. The corporation has ever since acted under this charter; and by this transfer the property of this voluntary association, worth $2,000, was at once vested in defendant, and held by it for the uses aforesaid. In consideration of all which it was agreed between defendant and the state of Missouri, that all the

property of defendant should be exempt from taxation so long as it was held and used by defendant in good faith for the purposes aforesaid, and this property is, and always has been, held and used by defendant solely for those purposes.

The answer of the Missouri Historical Society sets up its incorporation under the general corporation law as a benevolent, charitable, and educational association, originally organized there, and reorganized in 1880 with an amended charter, under article X chapter 21 of the Revised Statutes of 1879, with perpetual succession for three hundred years. The object of the corporation is to institute historical inquiry in all its branches, including archæology and ethnology, especially as concerns St. Louis and the Mississippi Valley, and to receive, collect, and preserve historical evidence. The answer alleges a gift of the real estate in question to it and its co-defendant, the Academy of Science, by the same deed from Lucas and wife, and is generally similar to the answer of the other defendant.

Plaintiff demurred to these answers as setting up no facts constituting any defence. The demurrer was sustained. Defendants refused to plead further, and there was judgment according to the prayer of the petition for the taxes of both years, and interest, etc.

A gift designed to promote the public good by the encouragement of learning, science, and the useful arts, without any particular reference to the poor, and any gift for a beneficial public purpose not contrary to any declared policy of the law, is a charity. And, if such a gift is administered according to the intention of the donor, the property is used for charitable purposes. Adams' Eq. 172; *American Academy of Arts* v. *Harvard College*, 12 Gray, 582, 594. We have no doubt that the pleadings sufficiently set forth that the lot in question was used for purposes "purely charitable;" and that, upon the admitted facts of the case, the lot is now exempt from taxation under sections 6 and 7 of Article X of the constitution of 1875, and the statute

of April 28, 1877, passed to give effect to these provisions, and exempting lots in incorporated towns or cities from taxation for state, county, or local purposes, when used for purposes purely charitable. The taxes for 1877 were assessed August, 1876, and the exemption act did not go into effect until July 30, 1877.

The constitution of 1865, provided that no property should be exempt from tax, except that used exclusively for public schools, and that which belonged to municipal corporations, counties, the state, or the United States. The constitution of 1875, adopted November 30th, of that year, provided that lots in cities or towns, to the extent of an acre, with the buildings on them, may be exempted from taxation when used exclusively for religious worship, schools, or purposes purely charitable ; and that all laws exempting property from taxation, except as above enumerated, shall be void. The act above referred to passed on April 28, 1877, had, of course, the effect of exempting from taxation the property in question from July 30, 1877, the date at which it went into effect. The question is whether, as the proceedings to enforce this tax were commenced after the passage of this act, they can be maintained.

A tax is not a debt, and it was perfectly competent for the general assembly, under the constitution of 1875, to arrest proceedings to collect taxes imposed after the constitution of 1875 went into effect, upon property which the legislature under that constitution was authorized to exempt from taxation. *City* v. *North*, 57 Me. 392.

Where a provision of the written law is repealed, it is considered, where existing rights and remedies are not expressly saved by the repealing clause, as having no existence as to all transactions *in fieri*, except where rights have vested under the old law. If the question was as to the validity of a tax-title, the case would be governed by the law as stood at the time of the assessment. But we are not concerned, in this case, with the validity of a tax-title, or with

the rights of third parties. The question is, whether, the state having exempted this property by a general law in 1877, the collector can now proceed to subject it to taxes assessed in 1876. A's to the taxes of 1878 assessed in 1877, it is clear that the proceedings are bad, and the answers of defendant set up a good defence as to them; but, as the case must go back, we will dispose of the whole question.

The act of 1877 certainly had the effect of repealing any provisions of acts passed under the constitution of 1865, or of that constitution itself, subjecting the property in question to taxation, because they would be repugnant. And we see no reason why the well-settled rule that a statute repealed, except as to matters passed and closed, must be regarded as if it never had existed, should not apply. Dwarr. Stat. 676; *Butler* v. *Palmer*, 1 Hill, 324. Inchoate rights generally, derived under a statute, are lost by its repeal, unless saved by express words in the repealing clause, and actions begun under the repealed statute must be concluded under it whilst it is an existing law, saving all question as to affecting contracts existing at the time the law was repealed. *Key* v. *Goodwin*, 4 Moo. & P. 351; *Couch* v. *Jeffries*, 4 Burr. 2462. In Indiana, a road tax was assessed in 1822 which was repealed in 1824. The repealing act expressly saved any act done before the repealing act. The land was sold in November, 1824, for non-payment of the tax assessed under the law of 1822. But, as the sale was made two months after the repeal of the statute requiring the tax to be collected, and prescribing the mode of its collection, it was held that this sale and all proceedings for the collection of the tax after the repeal were void. *McQuilkin* v. *Doe*, 8 Blackf. 581.

In that case, however, the statute prescribing the mode of collecting the tax had ceased to exist. In the case at bar, no change had been made in the statutory provisions providing for the collection of the tax; the law had been abrogated only so far as it subjected to taxation this partic-

ular species of property. Where a statute prescribes a new mode of proceeding to enforce the collection of taxes, and, at the same time, establishes a new exemption, no doubt inchoate rights derived under the old statute, unless expressly saved, would be lost by its repeal. And we see no reason why the collector should be held to have the right to proceed for back taxes against property subject to the tax at the time it was assessed, but which has been exempted before the proceedings to subject the property to the tax were begun, merely because the manner of procedure has not been changed by law. Where township boards were authorized to levy and collect taxes for necessary expenses, and a law was subsequently passed forbidding the levy and collection of such taxes, it was held that, after the passage of the later act, taxes ordered before its passage could not be collected. *Mitchell* v. *Board*, 71 N. C. 400. And we are of opinion that, where the legislature exempts from taxation a certain class of property which had been subject to taxation, and makes no provision as to the collection of taxes already assessed against such property, its intention must be that proceedings should not afterwards be inaugurated to subject the exempted property to the tax which has been removed, although the assessment was made before the repeal of the tax. Where a previous statute imposes a penalty, the repeal of the act imposing the penalty takes away the right of recovery, though the prosecution was pending at the time of the repeal. *Seaton* v. *United States*, 5 Cranch, 281 ; *The Commonwealth* v. *Duane*, 1 Binn. 608. The Bankrupt Act in England contained a clause compelling the imprisoned insolvent to assign his property, and entitling him to his discharge. This compulsory clause was repealed, and an insolvent who had assigned whilst the clause was in force, claimed his discharge ; but it was refused, on the ground that the clause had been repealed. *Rex* v. *Justices of London*, 3 Burr. 1456. If the repealing of a statutory enactment entirely obliterates it as if it had never been

passed, as it is said to do, the ground of the action by the state for taxes imposed by a law under which an assessment has been made, is entirely cut away by a subsequent act which exempts this property, and has therefore the effect of repealing the enactments under whose provisions the assessment was made. The right of the collector must, in the present case, be founded upon the provisions of the constitution of 1865 as to non-exemption, and the statutes passed in conformity with those provisions; but, if the constitution of 1875 and the statute of 1877 cut up the stock on which the assessment of 1876 was grafted, by declaring the property which the assessor now seeks to subject to taxes exempt, we do not see how the proceeding can be maintained. No rights of action have vested. There is no question of contract, either express or implied. The legislature had the undoubted right to remove the burden, and the only question is whether, under the recognized rules for the construction of legislative enactments, the exemption of this property from taxation in 1877 must be held to render it incompetent for the collector to commence, after that date, proceedings to subject the property to back taxes assessed before the passage of the act repealing the enactments under which that assessment was made. We think that it ought so to be held.

In this view of the case, it becomes unnecessary to examine the constitutionality of section 3 of the revenue law of 1872, the exemptions in the charter of the Academy, and the effect upon those exemptions of section 1 of the schedule to the constitution of 1875.

The judgment is reversed and the cause remanded. All the judges concur.