ST. LOUIS UNION TRUST CO. et al. v. BURNET, Commissioner of Internal Revenue.

No. 9355.

Circuit Court of Appeals, Eighth Circuit.

May 18, 1932.

Henry J. Richardson, of Washington, D. C., and C. Powell Fordyce, of St. Louis, Mo., (Samuel W. Fordyce and Fordyce, White, Mayne & Williams, all of St. Louis, Mo., on the brief), for petitioners.

F. Edward Mitchell, Sp. Asst. to the Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lewis S. Pendleton, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before VAN VALKENBURGH and SANBORN, Circuit Judges, and DAVIS, District Judge.

VAN VALKENBURGH, Circuit Judge.

This case is before us to review the decision of the United States Board of Tax Appeals ordering, upon redetermination, a deficiency in federal estate tax upon the estate of George Warren Brown, a resident of St. Louis, Mo., at the time of his death, December 13, 1921. The decedent left a will containing fifteen articles in which he disposed of a large fortune. Two provisions of this will are involved in this controversy,—paragraph (a) of article 6 and article 13. These provisions read thus:

"Sixth: (a). I give and devise to the Union Methodist Episcopal Church of the City of St. Louis, Missouri, the real estate or property which I now own adjoining said church on the west and fronting Delmar Avenue and known as Luccock Lodge.

"My Executors shall set aside and hold in trust Seven Hundred and fifty (750) shares of the preferred stock of the Brown Shoe Company, Inc., having a par value of Seventy-five Thousand Dollars ($75,000.00), the entire net income from said stock to be paid to the Union Methodist Episcopal Church of the City of St. Louis so long as said church continues in the downtown part of said city, giving its services largely to young people, many of whom are without permanent homes, upon the following further conditions:

"Approximately one-third (⅓) of said net income shall be used by said church in the support of the Social Service work connected with Luccock Lodge, one-third (⅓) of said net income shall be devoted to other depart-

ments of said church and the remaining one-third (⅓) of said net income shall be devoted to the annual benevolences of said church. This bequest of the net income from said preferred stock to said church is upon the further condition that the church shall secure by way of support from its membership annually, an amount equal to at least double the amount of said net income from said preferred stock.

"If, at the end of ten (10) years following my decease, the said Union Methodist Episcopal Church has complied with the general conditions of this bequest and has received and used the net income from said preferred stock as hereinbefore contemplated, then my Executors, in their capacity as Trustees, shall transfer and deliver said Seven Hundred and Fifty (750) shares of preferred stock to said Union Methodist Episcopal Church to be by it and its Official Board devoted to the general purposes of the church and the trust herein created shall cease.

"If, before the expiration of ten (10) years following my decease, the said Union Methodist Episcopal Church shall fail in any substantial particular to meet the conditions under which it is entitled to receive the net income from said Seven Hundred and Fifty (750) shares of preferred stock for a period of two (2) years, then, in that event, the trust herein created for the use and benefit of said church shall cease and determine and said shares of stock shall pass to and become a part of the George Warren Brown Fund referred to and created by Article Thirteenth of this will.

"Thirteenth: All of the rest, residue and remainder of my estate, including lapsed legacies, bequests to organizations which fail to conform to conditions hereinbefore set forth or which cease to exist before the termination of the bequests herein specified, and all other property remaining undisposed of, shall pass to my wife, Bettie Bofinger Brown, William H. Davies and the St. Louis Union Trust Company, In Trust, and to the survivor and successor or successors of them, same to be held as the George Warren Brown Fund for a period of five (5) years following my decease. Said Trustees shall have full power to hold and manage said fund, and the property constituting the same, with power to sell, lease, exchange, invest and otherwise deal with the property in such manner and upon such terms as, in their judgment, will be for the best interests of said Trust Fund. In the event of the death or resignation of either of said Trustees, the

two surviving Trustees shall have power to appoint a Successor Trustee.

"At the expiration of five (5) years following my decease and within one year after such expiration, said Trustees shall devote said fund to such benevolent purposes as, in their opinion, will constitute a fitting testimonial or memorial for me and, in some degree, extend my usefulness and helpfulness to others.

"Any property or funds remaining in the hands of said Trustees or coming to the Trustees after the expiration of Five (5) years which would be properly added to said trust fund shall be used by said Trustees for the same general purposes."

The applicable law is to be found in the Revenue Act of 1921, c. 136, 42 Stat. 227, 279, as follows:

"Sec. 403. That for the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate — * * *

"(3) The amount of all bequests, legacies, devises, or transfers, * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such religious, charitable, scientific, literary, or educational purposes."

Article 50 of Regulations 63 (1922 Edition) promulgated by the Commissioner of Internal Revenue, provides:

"*Conditional Bequests.*—Where the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed.

"Where the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

The Commissioner determined the gross estate to be $3,062,411.35, that, because of disallowance of the devises under said articles 6 and 13 as above set out, the undischarged deficiency tax was $65,027.49. The Board of Tax Appeals, upon redetermination, placed the deficiency at $62,047.11. It is stipulated that the amount of the residue of the estate bequeathed under article 13 aforesaid, based upon the values of the property of the estate made by the Commissioner, is $589,059.63. The bequest to the Union Methodist Episcopal Church is valued at $66,000. Respondent disallowed $58,673.77 thereof as a deduction. The disallowed deductions, therefore, aggregate approximately $647,733.40.

It is the position of respondent (1) that "since the gift to the church under the sixth article of the decedent's will was dependent upon conditions to be performed during the period of ten years following the decedent's death, there was no absolute or measurable gift to charity at the time of death"; and (2) that, "under the thirteenth article of the will, the trustees were authorized to devote the residue of the estate to purposes other than charitable purposes."

Petitioners on the other hand contend (1) that "the bequest to the trustees for the Union Methodist Episcopal Church was not subject to such conditions as to justify its disallowance as a deduction"; and (2) that "the amount of the residue bequeathed under article thirteenth is deductible as a bequest to trustees for 'exclusively religious, charitable, scientific, literary or educational purposes.'" It is stipulated that the Union Methodist Episcopal Church is a corporation organized exclusively for religious purposes, and further:

"That for a period of over six years following the death of George Warren Brown said Union Methodist Episcopal Church performed the conditions of said bequest and the Executors from time to time paid said church the entire income received in dividends on said preferred stock less the Executor's commissions thereon.

"That at the end of said six year period, said Church gave guaranty satisfactory to the Executors that it would continue to perform all of the conditions of said bequest during the remaining period of four years, and thereupon the Executors transferred and delivered to said Church the certificate or certificates representing the 750 shares of said stock so bequeathed."

Petitioners, therefore, contend that, inasmuch as it is conceded that all the conditional events have now occurred, this bequest is deductible on its own facts; but, regardless of the nature of the conditions, whether precedent or subsequent, "the amount of this bequest is deductible because, on the failure to perform them, it passed (by the terms of the will) to the trustees under article thirteenth who * * * were to use it for purposes exclusively charitable."

Let us first consider the status of the devise under article 6 of the will. It is stipulated that at the end of the sixth year following the death of the testator the Union Methodist Episcopal Church had performed all the conditions of the bequest up to that time, and had given a satisfactory guaranty to the executors that it would continue so to do, whereupon the executors transferred and delivered to the church the certificate or certificates for the 750 shares of stock bequeathed under this article. The transaction involving this bequest was thus treated as consummated and closed as between the executors in their capacity as trustees and the devisee. It is conceded that this devise was to a corporation or association organized exclusively for religious purposes. It is because of the conditions interposed that the Commissioner and Board of Tax Appeals, construing article 50 of Regulations 63, above set out, have disallowed this bequest as nondeductible, on the ground that the performance of the conditions must take place before the deduction can be allowed. They therefore contend that the deductions allowable must be measured as of the time of the decedent's death. Ithaca Trust Co., Executor and Trustee, v. United States, 279 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647.

■ "Under § 403 (a) (3), of the Revenue Act of 1918, which provides that bequests to charitable corporations may be deducted in determining the net estate subject to estate tax, a contingent bequest the value of which cannot be determined from any known data but depends on mere speculation, is not deductible." Humes et al. v. United States, 276 U. S. 487, 48 S. Ct. 347, 72 L. Ed. 667.

Compare Klein v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996; Farrington et al. v. Commissioner (C. C. A. 1) 30 F.(2d) 915, 67 A. L. R. 535; Sargent et al. v. White (C. C. A. 1) 50 F.(2d) 410.

■ At the time of the testator's death, it was impossible definitely to determine whether for the extended period named the church would devote the net income from the stock to the precise uses prescribed, or that it would or could secure from its membership

annually "an amount equal to at least double the amount of said net income from said preferred stock." Apparently, for a period of six years, no attempt was made to reach such a determination, and then the conditions were sought to be satisfied, not by performance, but by guaranty only. Constrained by the authoritative decisions of the Supreme Court, and in harmony with the persuasive rulings in the First Circuit, supra, we hold that the bequest under article 6 of the will was not deductible at the time of the death of the testator, and that the deduction of this item was properly denied. Inasmuch further as it did not pass to and become a part of the George Warren Brown Fund, created by article 13 of the will, its status cannot be established under that article.

■ This brings us to a consideration of this latter article. Respondent bases his refusal to allow this deduction upon a strict construction of the language of the exemption, holding that this devise to trustees is not exclusively for religious, charitable, scientific, literary, or educational purposes. The determination of this question is confined to the word "charitable," because the language of article 13 does not involve the other terms of the exemption. The argument of the Board of Tax Appeals and of counsel for respondent dwells upon the meaning of the word "benevolent," as construed in text-book and decision, citing Zollmann's American Law of Charities (section 397 et seq.) and cases to the same general effect that, "while no absolute or exhaustive definition of either charity or benevolent has ever been formulated, and while the distinction between them is shadowy and evanescent, it can confidently be stated that benevolence covers more ground than charity. Though every charitable purpose is benevolent, not every benevolent purpose is charitable." For this reason it is held that the devise to trustees of a fund to be devoted "to such benevolent purposes as, in their opinion will constitute a fitting testimonial or memorial for me, and in some degree, extend my usefulness and helpfulness to others," is not exclusively for charitable purposes. It is no doubt true that, as used in some connections, the word "benevolent" has been held to include private benefactions beyond the accepted scope of public charity. Uniformly, however, this has not been permitted wholly to defeat the gift where the charitable intent appears on the face of the will. Jackson v. Phillips et al., 14 Allen (Mass.) 539, 556. It is in this case that we find the definition of a legal charity given by Mr. Justice Gray, than which the Board

of Tax Appeals knows none "more accurate, concise and comprehensive," to wit:

"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

Continuing, the learned justice says: "If the words of a charitable bequest are ambiguous or contradictory, they are to be so construed as to support the charity, if possible. It is an established maxim of interpretation, that the court is bound to carry the will into effect, if it can see a general intention consistent with the rules of law, even if the particular mode or manner pointed out by the testator is illegal."

By the same distinguished jurist we find this statement in Saltonstall et al. v. Sanders et al., 11 Allen (Mass.) 446, loc. cit. 468: "The word 'benevolent,' without the addition of any synonymous or explanatory words, has been often, if not uniformly, used in the statutes of the Commonwealth, as equivalent to 'charitable.'"

He continues thus (loc. cit. pages 454, 456 of 11 Allen [Mass.]): "This bequest is to receive such an interpretation, if possible, as will carry out the intention of the testator. A charitable gift, above all others, is to be so construed ut res magis valeat quam pereat. As Lord Chancellor Chelmsford said, in the most recent case in the house of lords upon the construction of general charitable bequests, 'If there are two meanings of a word, one of which will effectuate and the other will defeat the testator's object, the court is bound to select that meaning of the word which will carry out the intention and objects of the testator.' Whicker v. Hume, 7 H. L. Cas. 154."

■ Such also is the law of Missouri, in which state, the residence of the testator, this will was executed. Gossett v. Swinney (C. C. A. 8) 53 F.(2d) 772. Certiorari denied 52 S. Ct. 497, 76 L. Ed. ——. We do not wish to be understood as holding that the law of the state of domicile and testament controls.

"The Act of Congress has its own criteria,

irrespective of local law." Weiss v. Weiner, 279 U. S. 333, 337, 49 S. Ct. 337, 338, 73 L. Ed. 720.

We think, however, that the law of his state, with reference to which the testator may be presumed to have made testamentary disposition of his property, is not without some force as indicating his intent and purpose. Compare Klein v. United States, 283 U. S. 231, 234, 51 S. Ct. 398, 75 L. Ed. 996. We are sensible also of the rule that we should not lightly depart from the language of a statute in order to escape consequences which are thought to entail hardship, thereby opening a way to tax evasion. Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156; Schoenheit v. Lucas (C. C. A. 4) 44 F.(2d) 476. Equally, however, it is to be remembered that the courts are "bound to carry the will into effect, if it can see a general intention consistent with the rule of law," and, if possible, so to construe the language of a will as to support the charity. Charitable bequests are favorites of the law. Furthermore, every presumption is to be indulged against intestacy. If this devise under the terms of article 13 is not a charitable bequest, the estate is intestate to the extent of $589,000. The intention of the testator is to be gathered, not from the language of a clause, standing alone, but from the four corners of the will, and by a consideration of the character and temperament of the testator himself as revealed by the record. Gossett v. Swinney (C. C. A. 8) 53 F.(2d) 772.

"Taxation is an intensely practical matter, and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences." Farmers' Loan & Trust Co. v. Minnesota, 280 U. S. 204, 212, 50 S. Ct. 98, 100, 74 L. Ed. 371, 65 A. L. R. 1000.

Doubts are resolved against the government. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. Ed. 240, 29 A. L. R. 1547; Red Wing Malting Co. v. Willcuts (C. C. A. 8) 15 F.(2d) 626, 629, 49 A. L. R. 459.

"All property held for public purposes is held as a charitable use, in the legal sense of the term charity. Law Library, vol. 80, p. 116, Grant on Corporations." Perin et al. v. Carey et al., 24 How. 465, 494, 16 L. Ed. 701.

"A charitable use, where neither law nor public policy forbids, may be applied to almost any thing that tends to promote the well-doing and well-being of social man.

Perry on Trusts, sect. 687." Ould v. Washington Hospital, etc., 95 U. S. 303, 311, 24 L. Ed. 450.

With these principles in mind, let us analyze the provisions of this will in order to arrive at the intent of the testator and a permissible construction of the article now under consideration.

The will of the decedent falls naturally into three divisions or sections. In the first section, embracing the first three articles, after making provision for the payment of debts and liabilities, including funeral expenses, and for the erection of a family tomb, and the upkeep of the family cemetery lot, he gives to his wife the home place with its appurtenances, and one-half of the residue of his estate after making the payments and distributions, hereinabove mentioned, and after paying the necessary expenses of administration. In the second section of the will, embracing the fourth and fifth articles thereof, he makes provision for his relatives and close friends—the natural recipients of his bounty. The remaining articles of his will are devoted to a large number of bequests for various religious, charitable, and educational purposes. Exclusive of articles 6 and 13, section 3 of the will makes provision for thirty-one of such benefactions, amounting to more than $800,000, approximately one-third of his entire estate. The Commissioner of Internal Revenue has recognized the exempt nature of these bequests, and has allowed deductions accordingly. In this third section of the will are found articles 6 and 13, the only ones involved in this litigation. It is conceded that the Union Methodist Episcopal Church falls within the provision granting exemptions to corporations or associations organized exclusively for religious purposes; the objection being solely because of the conditional nature of the bequest. It seems, therefore, that article 13 is the only one excepted by the Commissioner from his long list of benefactions, embraced within this section of the will, because not deemed to be devised to trustees exclusively for charitable purposes. In the opinion of the Board emphasis is placed upon the fact that, under some conditions, the word "benevolent" may be broader in scope than the term "charity." It fears, therefore, that the language of the testator in this thirteenth article does not limit the trustees to purposes exclusively charitable. It concedes, however, that the case presents "a difficult and close question." It apparently agrees with Zollmann that "no absolute or exhaustive definition of either charity or benevolence has ever been formulated," and that "the distinction

between them is shadowy and evanescent." It is "conscious of the fact that Congress undoubtedly intended to encourage bequests for the purposes mentioned in the Act," and protests that it does "not want to be narrow" in construction. The extreme closeness of the question in the mind of the Board is revealed by its statement that "an easy solution of this case would be to hold that it is like" a number of cited cases, among them Herron v. Heiner (D. C. )24 F.(2d) 745, 748, in which it is said: "The clear purpose of the testator, in the humane and philanthropic distribution of his large estate must not be defeated, and the manifest purpose of Congress exempting charitable gifts from taxation must not be thwarted by any narrow and meaningless interpretation of testator's will."

In view of this conceded effort on the part of the testator to extend his usefulness and helpfulness to others, i. e., the public generally in need of such assistance, and of the Board's appreciation of the difficulty experienced by it in reaching a satisfactory conclusion, expressive of the "character of the man as manifested in the disposition of his property" and in harmony with the congressional purpose to encourage charitable bequests, may we not with propriety examine and analyze the will as a whole, with the broad purpose of effectuating the purpose of the testator, if that be possible?

■ After making ample provision for the natural recipients of his bounty, Mr. Brown devoted the remainder of his testamentary dispositions to bequests falling naturally under the general term charity. As stated in State v. Academy of Science, 13 Mo. App. 213, 216: "A gift designed to promote the public good by the encouragement of learning, science, and the useful arts, without any particular reference to the poor, and any gift for a beneficial public purpose not contrary to any declared policy of the law, is a charity."

The trustees were directed to devote the fund created as provided in article 13 "to such benevolent purposes as, in their opinion will constitute a fitting testimonial or memorial for me, and, in some degree, extend my usefulness and helpfulness to others." We have here an expressed purpose which falls exactly within the general definitions of a charity found throughout the decisions (Gossett v. Swinney, supra), and expressly approved by the Board of Tax Appeals in its opinion in this case. As said by the Supreme Court in Perin v. Carey, supra: "Charity, in a legal sense, is rather a matter of description than of definition. * ᶜ * All property held for public purposes is held as a charitable use, in the legal sense of the term charity."

■ We think it may confidently be stated that the word "benevolent," when used in connection with gifts for a general beneficial public purpose, to promote the public good, either by bringing minds or hearts under the influence of education or religion, by relieving human bodies from disease, suffering or constraint, by assisting others to establish themselves in life, or by any other means conducive to general happiness and well-being, connotes charity, and should be so construed. The words "usefulness" and "helpfulness" are far-reaching and comprehensive. It has been said that the word "benevolent" has a dual meaning, depending upon whether it is used in conjunction with "charity" or "charitable," or is "in other ways limited by the context"; or whether it has been expanded to include purely private benefactions, beyond the accepted scope of public charity. Upon this phase of the question the language of Mr. Justice Gray in Saltonstall v. Sanders, supra, is particularly in point:

"If there are two meanings to a word, one of which will effectuate and the other defeat the testator's object, the court will select the former. Whicker v. Hume, 7 H. L. Cas. 154. 'Benevolence,' in its popular sense and use, is synonymous with charity. These terms are used interchangeably in common speech, in the books, and in the statutes. (The counsel referred to some of the statutes cited in the opinion.) The testator intended to provide for the relief of the poor. He used the word 'benevolence' in its popular sense, meaning well doing, and not well wishing; just as he used 'temperance' in its popular sense, and not as meaning moderation or forbearance. The question to be decided is, what this testator meant by the word 'benevolence;' not what the word means etymologically, or as used in any other connection whatever.

"The words 'public or private,' as used in this will, do not defeat the charity. They refer merely to the instrumentality, or the method of administering the charity. The scope and reach of the charity are general, though the hand that administers it is private. Every individual in the community may be the recipient of it."

■ It was undoubtedly the intention of the testator that this bequest should be devoted to charitable uses. It occurs in that section of his will dealing exclusively with gifts of the same general nature. It was devised to

trustees with authority to select the beneficiaries from the general class described. Every individual in the community might be, directly or indirectly, the recipient of it. The testator desired that the execution of this trust should take such form as to constitute a fitting testimonial or memorial for himself. This would necessarily exclude the conception of a private benefaction beyond the scope of a public charity. The trustees have transferred this fund to the Young Men's Christian Association and to Washington University, both of the city of St. Louis, Mo. These beneficiaries are "corporations organized and operated exclusively for religious, charitable or educational purposes, no part of the net earnings of which inure to the benefit of any private stockholder or individual." As a memorial to the testator, the said Young Men's Christian Association has designated the auditorium in its downtown building as the "George Warren Brown Auditorium." We do not contend that what the trustees have actually done is determinative of the petitioner's right to deduction. We do think, however, that this disposition of the fund is illustrative of the use essential to the creation of a fitting memorial for the testator, and of the interpretation that has been,—naturally, we think—placed upon this article of the will.

The strict construction of language seeking to establish charitable trusts, found in some cases in this country, had its origin in the earlier English cases influenced by the policy disclosed in the Statute of 9 Geo. II, c. 36, commonly known as the Statute of Mortmain, passed to remedy then existing abuses by prohibiting devises of land, or bequests of money to be laid out in land, to charitable uses. Jackson v. Phillips, supra, 14 Allen (Mass.) loc. cit. 557. The later English and Scotch cases, however, have displayed a highly liberal attitude. In Wilson et al. v. The Lord Advocate, Scotland Ses. Cas. (1926) p. 579, the court held, as purely charitable, a gift to trustees to be applied "among such charities, public, or private, or charitable or benevolent institutions as they (the trustees) in their uncontrolled discretion may think fit." Lord Sands in a concurring opinion said; "A purpose which is benevolent is also charitable." Compare Hay's Trustees v. Baillie, Scotland Session Cases (1908) p. 1224; MacKinnon's Trustees v. MacKinnon, Scotland Cases (1909) p. 1041, (House of Lords); Paterson's Trustees v. Paterson, Scotland Session Cases (House of Lords, 1909) p. 485.

It is our view that the trust created under article 13 of the will involves an exclusively charitable bequest under all the tests applicable in the premises; that, as such, that bequest falls within the exemption defined in paragraph (3) of section 403 (a) of the Revenue Act of 1921, and should be deducted from the value of the gross estate. The order of the Board of Tax Appeals with respect to the devise under article 6 of the will is affirmed, and that under article 13 is reversed, and the case is remanded for redetermination in harmony with the views herein expressed. It is so ordered.