**G.A. BUDER, III, Personal representative of the Estates of G.A. Buder, Jr., Deceased; Theodore A. Buder, Personal representative of the Estates of G.A. Buder, Jr., Deceased; Marshall O. Buder, Personal representative of the Estates of G.A. Buder, Jr., Deceased; Boatmen's National Bank, of St. Louis, Personal representative of the Estates of G.A. Buder, Jr., Deceased, Appellees,**

v.

**UNITED STATES of America, Appellant.**

No. 92–3723.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1993.

Decided Oct. 29, 1993.

---

Bridget M. Rowan, Dept. of Justice, Washington, DC, argued (Gary R. Allen and David E. Carmack, on the brief), for appellant.

Richard D. Lageson, St. Louis, MO, argued, for appellees.

Before BOWMAN and MAGILL, Circuit Judges, and HENDREN,* District Judge.

BOWMAN, Circuit Judge.

The United States appeals the judgment of the District Court[1] awarding the estate of G.A. Buder, Jr. a federal estate tax refund. We affirm.

### I.

Buder, a St. Louis business and tax attorney, died in 1984, leaving a will he personally drafted and a substantial estate. Article I of his will provides for the payment of his debts and the expenses associated with his death. Article II explains that he did not make a provision for his daughter because her status as a member of a religious order had changed her "needs and requirements." Article III and Article IV provide bequests for his wife.

The pivotal issue in this case concerns Article V of the will, which states that "twenty-five percent (25%) of my remaining net estate ... shall be divided among and paid to the following charitable, benevolent or educational organizations or entities, or their respective successors[,] in the following proportions." Article V then lists thirteen charitable organizations that were to receive bequests. Pursuant to 26 U.S.C. § 2055(a)(3) (1988), the estate deducted these bequests in

---

\* The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable Clyde S. Cahill, Senior United States District Judge for the Eastern District of Missouri.

determining its federal estate tax liability. The only deduction challenged by the Government is that of the bequest of Paragraph D (the "Paragraph D Trust"), which provides that

D. Ten per cent (10%) [of the assets disposed of by this Article shall be given to five listed persons], IN TRUST, however, to be used solely and exclusively in fostering and promoting the cause of patriotism, loyalty and fundamental constitutional government in the United States of America, and in combating subversive activities, socialism and communism, including, if deemed advisable, assistance in the teaching of the principles of conservatism in public affairs among college and high school students. The said Trustees and their successors in office are authorized and empowered to use the principal and income of such fund as they may agree to be most advisable and effective for the accomplishment of the objectives mentioned in this paragraph; and may, in their discretion, make contributions to other organizations or specific programs constituted and operated to achieve the purposes herein mentioned....

. . . .

Article VI places the remainder of Buder's estate in trust for his wife and children. Article VI(e) provides that "[d]uring the life of my beloved wife Kathryn M. Buder, my trustees shall pay over and deliver to her monthly any portion or all of the net income of the trust estate as they may in their discretion deem advisable." On its federal estate tax return, the estate treated this residual trust as "qualified terminable interest property" (QTIP) under 26 U.S.C. § 2056(b)(7)(B) (1988) and claimed the marital deduction.

The remaining articles of Buder's will deal with administrative matters. Buder subsequently executed a codicil to his will in which he bequeathed fifty thousand dollars to each of his grandchildren, made several minor changes not relevant here, and otherwise ratified the contents of his will.

Buder's estate timely filed its federal estate tax return in 1986, showing a tax due of $156,648. As the result of an audit, however, the Internal Revenue Service determined in 1988 that the estate had a tax deficiency of $374,180 plus interest. This deficiency was based primarily on the IRS's disallowance of the estate's deduction of the bequest made to the Paragraph D Trust. The IRS did not challenge the estate's QTIP deduction of the portion of the estate passing under Article VI.

Later in 1988, after the IRS's audit but before its assessment of additional taxes against the estate, the trustees of the Paragraph D Trust executed an ancillary Indenture of Trust, by which they agreed that the Trust would make contributions only "to such charitable, scientific, literary or educational organizations whose policies are consistent with the purposes set out under the will of G.A. Buder, Jr. and are qualified as organizations described in Section 501(c)(3) and Section 170(c)(2) of the Internal Revenue Code of 1986." Subsequently, in 1989, the IRS determined that the G.A. Buder, Jr. Charitable Trust (the Paragraph D Trust and its ancillary Indenture of Trust) qualified under 26 U.S.C. § 501(c)(3) (1988) as a tax-exempt organization. Furthermore, the parties have stipulated that substantially all of the donations made from the Paragraph D Trust prior to the execution of this ancillary Indenture of Trust were to tax-exempt organizations.

After paying the deficiency assessed in the 1988 audit, the estate filed an administrative claim for a refund, which the IRS denied. The estate then brought this action in the District Court for a refund, claiming that the IRS had erroneously disallowed the estate's charitable deduction of the sums passing to the Paragraph D Trust.

During its trial preparations, the Government determined that the estate's deduction of Article VI's residual bequest as QTIP should have been disallowed. The Government made this determination at such a late date, however, that by the time it raised the QTIP issue only ten days remained before the trial's scheduled date. The Government did not earlier inform the estate of its objections to the QTIP deduction. It did, however, issue about a month before the trial's scheduled date a notice of deposition (which

it never took) to the trustees of the Article VI trust, telling them it intended to ask about the distribution of the trust's income. The estate objected to the Government's raising the QTIP setoff defense, claiming it was untimely and not pleaded.

The District Court concluded that the Paragraph D Trust qualified as a charitable deduction. The court refused to consider the Government's setoff defense because it was not timely raised, and it ordered the federal estate tax refund. The Government appeals, and we affirm.

## II.

■ We turn first to the issue of whether the estate properly deducted from its return Buder's bequest to the Paragraph D Trust. The Government, renewing the argument it made to the District Court, contends that the bequest does not qualify for a charitable deduction because the trustees have the discretion to dispense funds to organizations that engage in such noncharitable activities as lobbying and campaigning. Hence, the Government concludes, the Paragraph D Trust does not comply with the requirements established by the Internal Revenue Code, and the estate's deduction of the bequest was erroneous.

An estate may deduct bequests in trust that are to be used "exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals"; the deduction is improper, however, if the trust "would ... be disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation" or if the trustees "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 2055(a)(3) (1988).

■ Wills are construed in accordance with state law. *Teller v. Kaufman*, 426 F.2d 128, 131 (8th Cir.1970). Under Missouri law, the settlor's intent controls the interpretation of the bequest, and we must ascertain this intent "from the whole will and not from single words, passages or sentences." *Mer-*

*cantile Trust Co. v. Mercantile Trust Co.*, 677 S.W.2d 343, 346 (Mo.Ct.App.1984). Because Missouri courts use the same rules for construing both trusts and wills, *Central Trust Bank v. Stout*, 579 S.W.2d 825, 827 (Mo.Ct.App.1979), we construe Buder's Paragraph D Trust by examining the will in its entirety. Buder organized his will into several sections. After providing for his debts and the natural objects of his bounty, Buder turned in Article V to his charitable interests. At the beginning of the Article, he provided that his assets were to be distributed "to the following charitable, benevolent or educational organizations or entities." Buder then listed thirteen different charitable organizations, twelve of which were already established, the other being the Paragraph D Trust he created in the Article. The language Buder used at the beginning of the Article is consistent with that of the donations he made throughout the Article, and Buder clearly intended that the instructions he included at the beginning of Article V were to govern all bequests made by that Article. We find persuasive here the reasoning of *St. Louis Union Trust Co. v. Burnet*, 59 F.2d 922, 928–29 (8th Cir.1932):

It was undoubtedly the intention of the testator that this bequest should be devoted to charitable uses. It occurs in that section of his will dealing exclusively with gifts of the same general nature. It was devised to trustees with authority to select the beneficiaries from the general class described.

We find support for our reading of the Paragraph D Trust's language from the facts that the trustees have read the language in the same manner, made their donations to charitable organizations, and executed an ancillary Indenture of Trust that binds them to this reading of the Trust's terms. Indeed, the IRS has determined that the G.A. Buder, Jr. Charitable Trust is a tax-exempt organization.

The Government's argument that the trustees have discretion to make noncharitable donations would have force if the Trust were created independently of the charitable restrictions of Article V. However, because we construe the Paragraph D Trust as one of

a series of bequests in a self-contained article of the will, and thus construe its provisions in light of Buder's instructions at the beginning of Article V, the Government's argument loses its force. Indeed, Buder's listing of his purposes serves to limit the trustees' discretion, rather than give them too much, because to comply with Buder's directions, the trustees must make donations that are to "charitable, benevolent or educational organizations or entities" and that "foster[ ] and promot[e] the cause of patriotism, loyalty and fundamental constitutional government in the United States of America, and ... combat[ ] subversive activities, socialism and communism."

If we apply the Government's argument, the estate would have been able to deduct Buder's charitable bequest only if Buder had included directions, in addition to those at the beginning of Article V, that his trustees not attempt to influence legislation or participate or intervene in any political campaigns. The Government's cramped interpretation of Buder's charitable language is unavailing. Although it is certainly true that the words "charitable, benevolent or educational" do not by definition mean "all charitable, benevolent or educational activities except those proscribed by the Code provisions on charitable bequests," which is the sort of restrictive language the Government's argument would require, this Court has never held philanthropic testators to the exacting standard that the Government proposes. *See, e.g., Burnet*, 59 F.2d at 926 (holding that, although "benevolent" may have a broader meaning than does "charitable," a bequest was charitable within the meaning of the Code even though the will provided only that the trustees were to use the funds for "benevolent" purposes). We decline to set a standard that is so rigorous that the average testator who is attempting to make a charitable donation will fail to meet it.

The Government cites several cases holding that particular bequests were not charitable. None of these cases is relevant to this case, however, because Buder's intentions, as evidenced by the language of Article V, plainly were charitable and the terms of his will impose on his trustees the obligation to make charitable donations. Accordingly, we affirm the judgment of the District Court that the estate was entitled to a charitable deduction for the amount of the bequest made to the Paragraph D Trust.

## III.

■ We turn next to the Government's belated defense that, even if the estate's charitable deduction was proper, the estate is still not entitled to a refund because it was not entitled to a QTIP deduction and thus has not overpaid its taxes. The Government asserts that the estate's QTIP deduction of Article VI's residual bequest was improper. Accordingly, the Government concludes, it is entitled to set off the taxes that would be due it on Article VI's assets against any refund it owes the estate for the taxes it erroneously collected on the assets bequeathed to the Paragraph D Trust, thus eliminating the estate's tax refund.

Assets do not qualify as QTIP unless "the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals." 26 U.S.C. § 2056(b)(7)(B)(ii)(I) (1988). Article VI(e) of Buder's will states only that, during the life of his widow, the "trustees shall pay over and deliver to her monthly any portion or all of the net income of the trust estate as they may in their discretion deem advisable." The Government argues that the trustees are allowed to accumulate the trust income and, hence, the estate's QTIP deduction was improper.

We need not reach the merits of this argument, however, as we conclude that the Government waived this defense. The QTIP issue was never raised by the IRS during its audit, and the Government never pleaded or amended its complaint to include the setoff defense, instead raising it for the first time, only ten days before the trial's scheduled date, in its trial brief. Moreover, that the Government indicated (less than a month before the scheduled trial date) *in its notice of deposition of the trustees of the Article VI trust—a deposition that never took place—that it intended to ask questions pertaining to the distribution of the Article VI trust's income* does not mean that the estate was on

notice that the Government was planning to challenge the QTIP deduction. In these circumstances, we deem the Government to have waived its setoff defense. *See St. Louis–San Francisco Ry. Co. v. United States,* 417 F.2d 1359, 1360 (Ct.Cl.1969).

In addition, the District Court's refusal to consider the Government's setoff defense can be sustained on the basis of the court's pretrial order, which directed the parties to make all final changes to their pleadings not less than fifteen days before trial. Unless such an order is meaningless, it at least must mean that the trial court may refuse to hear a defense that is raised beyond the time specified in the order. Here, the Government raised its setoff defense only ten days before trial. We hold that the District Court did not abuse its discretion when it declined to consider this defense.

The District Court's decision is affirmed in all respects.