EDWARD G. CHERBONNIER, and others *vs.* ELIZA J.
GOODWIN. MARY C. C. BLANDIN and JOHN J.
BLANDIN *vs.* SAME. D. HOPPER EMORY, Trustee *vs.*
SAME.

*Construction of Will— Vested remainder—Legacy—Equity*
*—Laches— Waiver.*

A testatrix left the sum of fifteen hundred dollars to her son C.
in trust, the same to be invested in ground rents, or stock, or
other funds in his discretion, the income arising therefrom to
be used in the maintenance and support of her son E. during
his life; and to be in no wise subject to any claim, transfer,
or assignment of the said E. or liable for his present debts or
any future debts that he might contract; and after his death
the said fifteen hundred dollars to be equally divided among
the children which E. might have after the execution of the
will; and should he die without leaving a child, the said sum
to be equally divided among certain named grandchildren of
the testatrix. E. had two children born after the execution of
his mother's will, one of whom died in the lifetime of E. HELD:

That the legacy never vested in him, and after the death of E.
the whole went to the surviving child.

Where the trustee of a life estate in a specific sum of money
dies before the life tenant, the remainderman may, after the
termination of the life estate, sue the estate of the trustee for
the legacy in a Court of equity where such estate is being ad-
ministered.

The trustee of a life estate in a designated sum of money, died
before the life tenant, leaving an estate sufficient to pay all his
debts. The legatee of the remainder filed her first petition
claiming the fund, eight years after her right accrued, in the
Court of equity where the estate of the trustee was being ad-
ministered. There followed a succession of losses of papers,
without the fault of the petitioner. From time to time she
applied to the Court for permission to supply the missing
papers by substituting others in their places. Twelve years
after the filing of her first petition, she filed another alleging
that the said substituted papers, petitions and proceedings had
disappeared from the files of the Court, and her counsel, after

diligent search and inquiry, had been unable to find them, or procure any account of the same, and praying that her second petition might be substituted for her former petition. HELD:

That the petitioner was not guilty of laches.

An objection that a rehearing was granted more than thirty days after the filing of the final order dismissing the petition, in violation of sections 164 and 166 of Article 16 of the Code, is waived by twice re-arguing the case without objection on that ground.

APPEALS from the Circuit Court for Baltimore County, in Equity.

The order appealed from was passed on the 11th of July, 1893, and filed on the 13th of the same month, and directed D. Hopper Emory, substituted trustee under the will of Caleb D. Goodwin, to pay to the petitioner Eliza J. Goodwin, out of the funds in his hands as such trustee, the sum of fifteen hundred dollars, with interest from the 11th of June, 1872. On the 8th of August, 1893, two of the appeals were taken, and on the same day the following petition or motion was filed by D. Hopper Emory, trustee, and Caleb V. D. Cherbonnier:

Your petitioners pray the Court to strike out and vacate the order of this Court passed on 11th day of July, 1893, and filed 13th July, 1893, in the above cause, on the petition of Eliza J. Goodwin, and for a rehearing of the matter of said petition of Eliza J. Goodwin;

Because the said order was passed through inadvertence and mistake;

Because the said order was passed in conflict with the equity rules of procedure as established by the Court of Appeals of Maryland;

And for other reasons to be assigned at the hearing of this motion.

On the 9th of September, 1893, an appeal was taken by D. Hopper Emory, trustee. The case is further stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*Robert R. Boarman,* and *Samuel D. Schmucker,* (with whom was *George Whitelock,* on the brief,) for the appellants.

*D. G. McIntosh,* (with whom was *John I. Yellott,* on the brief,) for the appellee.

BRISCOE, J., delivered the opinion of the Court.

There are three appeals in this case, each by different persons, but they are from the same order, and involve the same questions. We shall consider them as one appeal.

The first question arising on the appeal depends for its decision upon a proper construction of the following clause of the will of Milcah Goodwin, who died in the year 1829. The testatrix gave unto her son, "Caleb D. Goodwin, the sum of fifteen hundred dollars in trust, to put out the same at interest, or invest the same in ground rents or stock, or other funds, as he shall see fit, and the interest and dividends arising therefrom to be by him expended and appropriated towards the maintenance and support of my son, Edward Goodwin, during his natural life; the same to be under the sole direction and control of my son, Caleb D. Goodwin, to be by him expended for the purpose aforesaid, as to him shall seem fit, and to be in no wise subject to any claim, transfer, or assignment of the said Edward Goodwin, or liable for his present debts or any future debts which he may contract; and, from and after the death of the said Edward Goodwin, then I will and direct that the said fifteen hundred dollars be equally divided among all the children which said Edward Goodwin may hereafter have; and in case the said Edward Goodwin should die without leaving such child or children,

then the said fifteen hundred dollars shall be equally divided between my grandchildren, William Henry Goodwin, Charles Edward Goodwin and Frances Colgate Goodwin, and the survivors of them."

It is admitted that Edward Goodwin had two children born after the execution of his mother's will, to-wit, the appellee, Eliza J. Goodwin and one other child, Alexander, who died in the lifetime of its father. And it is insisted upon behalf of the appellants, that upon the death of Alexander, his share of the legacy devolved upon his legal representatives and went in course of distribution to his father, in other words, that there was a vested remainder under the will in the after-born children of Edward Goodwin, so that Alexander's interest was not dependent upon his surviving his father. But in this view we cannot concur. There can be no doubt as to the general rule that the law favors the earliest vesting of estates whereever it can be done consistently with the intention of the testator.

It is well settled that in the construction of wills " the intention of the testator is the object of ascertainment in every case," and if that can be ascertained it is to be obeyed, unless it contravenes some settled and fixed rule of law or of construction. The testator has the right to fix the period of vesting to suit his wishes. He can postpone the period and make the vesting depend upon a contingency, and if he does, with reasonable certainty, the estate will not vest until the happening of this contingency. And whether the testator intended to give a vested estate or to make it depend upon a future contingency, depends in a great measure upon the language and phraseology of the will itself. This doctrine is fully laid down and applied in the recent cases of *Bailey vs. Love*, 67 *Md.*, 598, and *Larmour vs. Rich et al.*, 71 *Md.*, 384, and cases there cited. These cases are decisive of the question raised here. The remainder, therefore, never vested in Alexander,

the son of Edward Goodwin, because he died in the life-time of his father, before the period fixed by the testatrix for the remainder to vest. The words "from and after" the death of Edward Goodwin in connection with the limitation over to the grandchildren of the testatrix clearly indicate that it was the intention of the testatrix to post-pone the vesting of the legacy until after the death of Edward Goodwin. The appellee, then, having been born after the execution of the will, and having survived the life tenant, Edward, is clearly entitled to the whole legacy. We come now to the remaining questions in the case. First, whether Caleb D. Goodwin, executor and trustee under the will, ever received the sum of $1500 in trust, and if he did so receive it, whether the petitioner can now claim it and have it paid to her out of his estate, which is being administered in a Court of equity. At the first hearing of the petition of the appellee, the Circuit Court for Baltimore County dismissed her petition on the ground of the failure of proof to trace the fund into the hands of the present trustee, and to identify it as a part of the trust estate of Caleb D. Goodwin. Subsequently, however, the order dismissing the petition was suspended and a re-hearing granted. There can be no question that a suit in chancery can be maintained for a legacy, even in cases where a bond has been given to pay debts and legacies. Code, Art. 16, secs. 81 and 82.

Caleb Goodwin died in 1855, and the claim of the peti-tioner, the appellee in this case, did not arise until after the death of Edward, the life tenant, in 1864, and as his estate was being administered in a Court of equity, it seems clear to us that her proper remedy was in that Court. Whether then Caleb D. Goodwin received this legacy, as trustee, is a question of fact, and depends for its decision upon the proof in the case.

Additional testimony was offered at the rehearing of the case, consisting of copies of the first, second, third

and fourth administration accounts of Milcah Goodwin's estate; and these accounts, beyond doubt, show that he charged himself, as trustee, with this legacy. But it is contended upon the part of the appellants assuming the correctness of the position of the appellee upon the points which we have passed upon, that the laches of the appellee are fatal to her right to recover.

It appears that Caleb D. Goodwin died in the year 1855, and Edward Goodwin in the year 1864. The first petition claiming the fund was not filed until the year 1872. The trust fund, however, was at that time in the hands of Caleb Goodwin's trustee, and his estate was large and sufficient to pay all his debts.

The petition was answered by the trustee of Caleb's estate, but there was no denial of the validity of her claim. The delay, we think, has been sufficiently explained by the following reasons, which we adopt, in the language of the Circuit Court for Baltimore County: " Thereupon followed a succession of losses of papers without the fault of the petitioner. From time to time she applied to the Court for permission to supply the missing papers by substituting others in their places, until some time in 1884, when she filed another petition, alleging that the said substituted papers, petitions and proceedings had disappeared from the files of the Court, and that her counsel, after diligent search and inquiry had been unable to find them, or procure any account of the same, and praying that her petition then filed (in 1884) might be substituted for her former petition. Without alluding to other facts, what we have said is sufficient to show that the petitioner has met very great difficulties in the prosecution of her claim, and that if much time has elapsed the petitioner was not responsible for the delay—certainly not for all of it,—nor for so much of it as would justify us in saying that under all the circumstances of this case, she has been guilty of laches."

The remaining question brings up for review the action of the Circuit Court in granting a rehearing after the final order of August 3rd, 1888, dismissing the petition. This order was passed on the 8th of September, 1888, more than thirty days after the filing of the final order dismissing the original petition. And it is urged that this action of the Court in granting a rehearing was void, because in violation of sections 164 and 166 of Art. 16 of the Code, which provide that all final decrees and orders in the nature of final decrees shall be considered as enrolled from and after the expiration of thirty days from the date of the same, the day of the date inclusive. And that the proper proceeding on the part of the petitioner was by a bill of review and not for a rehearing of the case. But the question raised by this motion does not appear from the record to have been tried and decided by the Court below, but is raised for the first time in this Court.

By the 34th section of Art. 5 of the Code it is provided that " on an appeal from a Court of equity no objection," &c., " shall be made in the Court of Appeals, unless it shall appear by the record that such objection was made by exceptions filed in the Court from which such appeal shall have been taken." And by the 35th section of the same Article, it is provided, that " no defendant to a suit in equity in which an appeal may be taken, shall make any objection to the jurisdiction of the Court below, unless it shall appear by the record that such objection was made in said Court."

Besides this, it is well settled that a party may either expressly or impliedly waive a right or advantage which he might have enforced in proper time and manner, and we think this principle applies with peculiar force to this case. The motion was not made until on the 8th of August, 1893, the same day that the appeals to this Court were prayed, and this motion was not passed on or ever brought to the attention of the Court below.

The case was reargued orally and upon notes, after additional testimony had been taken and filed without objection by either side, and at that time no objection was interposed to the rehearing or the reargument. The case was again, upon the request of the Court, reargued a second time, upon notes, filed by counsel on both sides, and no such question was raised. Assuming, then, that there was error or irregularity in granting the order for a rehearing, we think that, under the circumstances of this case, there was a waiver on the part of the appellants, and they are precluded from raising that objection in this Court.

Finding no error, we shall affirm the order appealed from, and it is so ordered.

*Order affirmed, with costs.*

(Decided 13th March, 1894.)


The appellants, on the 30th of March, 1894, petitioned the Court to grant a reargument of the foregoing case, or to modify the order of the Court affirming the order of the Court below, in so far as the same charged the appellants with the payment of interest on the legacy of fifteen hundred dollars. The reargument was allowed.

BRISCOE, J., delivered the opinion of the Court.

When these appeals were before us at the January Term, 1894, of this Court, we affirmed the decree below, which not only gave to the appellee her legacy of $1500, but also interest thereon from the 11th of June, 1872, the date upon which she filed her claim in the case.

Upon leave of Court, a reargument of the case was allowed, to the extent of the payment of interest on the $1500, and the question here is, was this interest properly allowed? The appellee's claim is for a legacy, which was

bequeathed to Caleb D. Goodwin, in trust, for Edward Goodwin, with remainder to the appellee. The appellants, who are remaindermen under the will, and who have not received the income from the fund, should not be required to make good this income, which was not paid to them, but to the life tenants under Caleb D. Goodwin's will. The income as it accrued was annually paid to the life tenants, down to the death of the appellee's sister, Fanny C. Cherbonnier, about June 6th, 1886. All of the auditor's accounts distributing this income were ratified by the Court, except the account filed on August 25th, 1887.

We are therefore of opinion, that the appellee is only entitled to interest on this legacy from the death of Fanny C. Cherbonnier, the life tenant, and not from the 11th of June, 1872, as heretofore allowed. The former decree will therefore be modified to this extent.

> *Order reversed, so far as it relates to the payment of interest on the legacy of* $1500, *and cause remanded.*

(Decided 19th of December, 1894.)