UNITED STATES v. FOURTH NAT. BANK IN WICHITA, KAN.*

No. 1327.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1936.

*Rehearing denied May 19, 1936.

Lester L. Gibson, of Washington, D. C. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and Summerfield S. Alexander, U. S. Atty., and R. T. Mc-Cluggage, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for the United States.

Harvey C. Osborne, of Wichita, Kan. (Charles G. Yankey, John G. Sears, Jr., and Verne M. Laing, all of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

The appellee as plaintiff sued to recover certain taxes alleged to have been erroneously collected, and from a portion of the judgment allowing a deduction from an estate for tax purposes, the government appeals.

Prior to the year 1930 one Howard E. Case and his wife executed joint and mutual wills leaving in trust property of which the survivor died seized. Subsequent to the death of the wife and on November 13, 1930, Case executed an instrument of gift to the First Presbyterian Church of Wichita, Kan. It provided, in substance, that he was giving $100,000 toward the creation of a fund for the erection of a community adjunct to the church upon condition that the church should contribute an equal amount, with other stipulations. The instrument is set forth in full in note 1.[1]

---

[1] Note. 1.

"Know all Men by These Presents:

"That Whereas, Howard E. Case of Wichita, Sedgwick County, Kansas, desires to erect a memorial to his deceased wife, Sara Blair Case, and more particularly to perpetuate the memory of her interest, activity and faith in the Presbyterian Church, and believes that that purpose can best be served by enlarging and increasing the field of activity of that faith in a practical manner; and

"Whereas, to accomplish that purpose he desires that The First Presbyterian Church of Wichita, Kansas, should increase and enlarge its facilities, buildings and equipment to be able to extend and enlarge the interests, belief and practices of its teachings and faith, and to that end he desires that the said Church should erect as a part and adjunct of its present church facilities an educational or community building in which is to be carried on the activities of this Church which have to do with the propagation of the articles of faith of said Church; and

"Whereas, he does not desire to definitely restrict or limit the type or purposes of said building, but is willing that the same shall be left to the judgment of the Committee of the Church who shall have charge of this matter except that the building shall be of a type conformable to the type or architecture of the present church edifice, and fitting to the purposes for which it is intended; and

"Whereas, it is assumed that such structure can be erected for less than Two Hundred Thousand Dollars ($200,-000.00), the said Howard E. Case is willing to contribute one-half of the cost of said structure, but his one-half not to exceed One Hundred Thousand Dollars ($100,000.00), upon the condition that the other one-half will be obtained by donations or pledges or other funds available to said Church so that when said structure shall have been finished there shall be no mortgage upon the same or indebtedness, except such as will be paid out of good and reliable pledges and promises, or from other sources, in amounts which shall assure the full payment of the cost of said structure.

"Now, Therefore, in consideration of the premises, and upon the conditions and for the uses as herein expressed, the said Howard E. Case does hereby give to the Trustees of The First Presbyterian Church of Wichita, Kansas, and their successors for said church, the sum

Case died January 4, 1931. The Commissioner assessed a deficiency in tax upon the $100,000 which had been deducted from his estate for tax purposes by the executor, which tax such executor later paid and brought this suit to recover.

The record reveals nothing in regard to the situation which existed concerning the respect in which the donee had complied with the conditions of the instrument in the matter of securing pledges for its share of the building fund at the

---

of One Hundred Thousand Dollars ($100,000.00), less such deductions as may be occasioned by the circumstances and conditions as herein further expressed. That said sum is delivered to the Fourth National Bank in Wichita, Kansas, as agent of the donee, and to be held by said Bank for the Trustees of the First Presbyterian Church of Wichita, Kansas, but nevertheless subject to the conditions herein expressed.

"The said sum or less, together with an equal amount obtained as herein provided, is to be used in the erection of an educational or community building for the said Church at or adjoining the present location of the said Church edifice at the corner of North Lawrence Avenue and Elm Street in the City of Wichita, Sedgwick County, Kansas. The said building so to be erected is to be dedicated as and is for all time to be known as 'The Sara Blair Case Memorial' and by appropriate permanent inscription or tablet to be satisfactory to my daughter, Mrs. Margaret Case Jager, and my son, Howard E. Case, Jr., is to be marked and designated as such a memorial.

"The said church is to raise an amount equal to that herein given for use in erection and furnishing of said structure, but in case the said structure and the equipment and fittings therein, not including real estate upon which the said structure is located, shall not cost the total sum of Two Hundred Thousand Dollars ($200,000.00), then only such amount of said One Hundred Thousand Dollars ($100,000.00), shall be given to the Church as shall equal one-half of the cost of said structure, equipment and fittings, and any amount remaining not required or used in accordance with this agreement shall be paid by said Bank to the Trustee of the joint Trust Estate of Howard E. Case and Sara Blair Case created by their joint will in which The Fourth National Bank in Wichita is named as Trustee.

"It is a further condition of this gift that the funds to be raised by said Church shall have been raised by funds available for that purpose by the said Church or by good and valid pledges and promises, as herein provided, and certified to the Bank as herein provided, and work on the commencement of the building of said structure started all within

fifteen months from the date of this instrument, and in case these conditions shall not have been performed within that time, then the entire sum shall be paid and turned over to the Trustee of the said Trust Estate of Howard E. Case and Sara Blair Case, and the said gift as herein provided shall fail. It being contemplated and intended that when the building of said structure shall have been started that it shall be continued with reasonable diligence to its completion.

"It is further an express condition of this gift that such structure shall not be commenced until the funds which shall be necessary to assure its completion shall have been raised by actual cash contributions or other cash funds available belonging to said Church, and pledges and promises which shall be made by reliable persons.

"The said gift herein made shall be available to said Church in the erection of said building as and when the said Church shall certify to the said Bank, in writing, by its Trustees that the said Church as provided, in the manner as herein expressed, the other half necessary for the erection of said building; and provided further, that the said The Fourth National Bank, as holder of the fund herein provided for, shall have the right to know the pledges and promises which have been made in raising said fund, and shall have the right to pass upon the validity and financial responsibility of the said pledgers and promisors, and if not satisfied that such fund will be forthcoming, as provided in said pledges or otherwise, to refuse to accept the same; however, it is not intended that the Bank in passing upon the validity and financial responsibility of the pledgers and promisors that the same shall be measured by the standards of a good bankable note of such parties, but shall be measured by such consideration as will determine whether or not it is reasonably certain that the pledges and promises will be carried out. The decision on this matter of the Bank however to be final and within its sole discretion. However, the said Bank shall in no way incur any obligation on its part for its decision with respect to said promises and pledges. Upon said Bank receiving said certificate and upon being satisfied as to the validity and financial

time of the death of the donor. After the death of Case certain litigation took place involving the gift in the Kansas courts. The first contest evidently concerned the power and authority of the donor to make the gift in view of the joint wills of Case and his wife, in which it was decided by the Supreme Court of Kansas that Case was capable of making the gift. Fourth National Bank v. Presbyterian Church, 134 Kan. 643, 7 P.(2d) 81. Later a contest arose over the question as to whether or not the time to comply with the conditions of the gift had not expired, and it was determined by the Supreme Court that the time limit under the terms of the gift was suspended by the ensuing litigation. Fourth National Bank v. Presbyterian Church, 138 Kan. 102, 23 P.(2d) 491. It is stipulated in the record that within two months after the trial of the case at bar, the actual building of the community adjunct to the church was commenced and continued to completion within a reasonable time, under the conditions of the $100,000 donation by Case.

The statutes involved are:

26 U.S.C.A. § 411 (44 Stat. 9, 70):

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

"(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death."

And 26 U.S.C.A. § 412 (d) and note:

"For the purpose of the tax the value of the net estate shall be determined in the case of a citizen or resident of the United States by deducting from the value of the gross estate—* * *

"(d) The amount of all bequests, legacies, devises, or transfers, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes."

---

responsibility of the parties making such promises and pledges, or other satisfactory assurance of payment, it shall immediately make available to said Church for the erection of said structure all of the said One Hundred Thousand Dollars ($100,000.00), or such part as it may be entitled to receive under the terms of this writing.

"In case the provisions and conditions of this writing are not complied with within the time as herein fixed, then said fund—or any part remaining thereof—shall by said Bank be turned over to the Trustee of the Howard E. Case and Sara Blair Case Trust Estate hereinbefore identified as having been created under the joint will of said parties, and wherein The Fourth National Bank in Wichita is named as Trustee as a part of the residuary Trust Estate created in the said joint will.

"This gift is intended to be a present gift and the delivery of the same is to be completed, upon the conditions as herein made, by the said Bank either in his lifetime or after his death as made at this time.

"The said Howard E. Case reserves the right to receive any interest or earnings which he may be able to obtain from the said The Fourth National Bank as coming from the said funds during the time that the said funds shall not be actually available for the use of the said Church for the purposes as herein expressed; and, after his death the said earnings and income from said funds until the same shall be available to said Church shall become a part of this Trust Estate.

"It is a further condition of this gift that the edifice or structure which is to be erected as a Memorial without including the cost or value of the real estate upon which the same may be placed shall cost not less than One Hundred and Fifty Thousand Dollars ($150,000.00).

"The said structure in its entirety shall constitute and be known and designated as the Memorial to Sara Blair Case; however, it shall not interfere with or prevent parts of the structure and the furnishings and equipment therein by reason of gift or pledges, becoming memorials for other persons provided that the same shall have the written consent of Mrs. Margaret Case Jager and Howard E. Case, Jr., or the survivor.

"In Witness Whereof, this instrument has been executed this 13th day of November, A. D. 1930.

        "H. E. Case.

"Witnesses:
  "F. I. Hellar
  "F. W. McCabe."

The applicable Treasury Regulation is Art. 47 of Regulations 68:

"Conditional Bequests—When the transfer is dependent upon the performance of some act or the happening of some event, in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed."

The sole question presented here is whether or not the $100,000 was a part of the Case estate at the time of his death and as such subject to the tax provided by statute. The right of the church to have the benefit of the gift is not questioned.

Conditional gifts or bequests under this taxing statute have frequently been reviewed by the federal courts. Some of those cases are Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667; Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793; First National Bank of Birmingham v. Snead (C.C.A.) 24 F.(2d) 186; Farrington v. Commissioner (C.C.A.) 30 F.(2d) 915, 67 A.L.R. 535; Lucas v. Mercantile Trust Co. (C.C.A.) 43 F.(2d) 39; Delaware Trust Co. v. Handy (D.C.) 53 F.(2d) 1042; St. Louis Union Trust Co. v. Burnet (C.C.A.) 59 F.(2d) 922; Mississippi Valley Trust Co. v. Commissioner (C.C.A.) 72 F.(2d) 197; City Bank Farmers' Trust Co. v. United States (C.C.A.) 74 F.(2d) 692; Humphrey v. Millard (C.C.A.) 79 F.(2d) 107.

In the Ithaca Trust Case, supra, it was said that the estate transferred was to be valued as of the time of the death of the testator. There the testator gave the residue of the estate to his wife with authority to use from the principal any sum which might be necessary to maintain her in as much comfort as she then enjoyed, and after her death it was bequeathed in trust for charities. It was held that the value of the bequest to charities at the time of the death of the testator could be reasonably ascertained by the use of mortality tables in conjunction with the amount necessary to reasonably maintain the widow throughout her life, and that the appropriate deduction should be allowed. The Humes Case, supra, concerned a bequest to charities contingent upon the death of a niece without issue before she attained the age of 40, the niece being then living, of the age of 15 years, and unmarried. It was held that the use of mortality tables for the purpose of showing the probability of the woman dying at a given age would die unmarried, and that if married she would die childless, were too speculative and uncertain, and that by such means there was no definite way of determining the value of the contingent bequest, resulting in a disallowance of the deduction for taxation purposes. In United States v. Provident Trust Case, supra, the court observed that the question to be considered was the value of the interest to be saved from the tax. The condition considered was a bequest to charitable institutions contingent upon the death of a daughter without issue, the daughter at the time of testator's death being 50 years of age, in poor health, without children, and having had an operation which from scientific knowledge would prevent her from having children. It was held that the value of the contingent interest was ascertainable because it was possible to say, as a practical matter, that the daughter was incapable of bearing a child after the death of the testator, and the deduction was allowable. The First National Bank of Birmingham Case, supra, involved a situation of a bequest to charitable institutions subject to an allowance for the proper support of the widow out of the corpus in the event the income from the trust estate should not be sufficient for the proper support of the wife, and it was there held that the value of the contingency was reasonably ascertainable, the deduction being allowed. The Farrington Case, supra, concerned a bequest for education purposes contingent upon the death of a daughter without issue, the daughter being at the time of the death of the testator 52 years of age, and it was held by a divided court that the contingency of the daughter dying without issue was of such a speculative and uncertain character that the value could not be reasonably ascertained, the deduction not being allowed. The Mercantile Trust Company Case, supra, concerned a similar bequest to charitable institutions contingent upon the use of a sufficient portion of the corpus to maintain the wife in a manner necessary for her comfort and maintenance during her life, and it was there held that the value of the contingency was ascertainable by reasonable methods of computation and that the

deduction should be allowed. The Delaware Trust Company Case, supra, involved a bequest for charitable purposes conditioned upon no lapse in the reduction or discontinuance of a vicar's salary for a period of 50 years, and it was there held that the value of the contingency was not ascertainable by any known standards and the deduction was disallowed. The St. Louis Union Trust Company Case, supra, involved a bequest to a religious organization conditioned upon the contribution by the church within ten years of an amount equal to the net income from certain stocks set aside and placed in trust for its use and benefit. It was held that the value of the contingent interest could not definitely be ascertained and that there should be no deduction. Judge Van Valkenburgh in speaking for the court, 59 F.(2d) 922, at page 925, says: "At the time of the testator's death, it was impossible definitely to determine whether for the extended period named the church would devote the net income from the stock to the precise uses prescribed, or that it would or could secure from its membership annually 'an amount equal to at least double the amount of said net income from said preferred stock.' "

The Mississippi Valley Trust Company Case, supra, involved a will expressing the wish that the sons of the testator should make certain donations to charity which he had previously expressed to them, as in their discretion might seem best, and it was held that the power having been left to the sons to exercise in their discretion the deduction of gifts made by the sons was not allowable for taxation purposes. The City Bank Farmers' Trust Company Case, supra, concerned a bequest for charitable purposes contingent upon the death of a daughter without issue, the daughter being 59 years of age at the time of the death of the testator, and it was held that the improbability of the daughter having children was so great as to enable the court to determine with reasonable certainty the value of the contingency, the deduction being allowed. The Humphrey Case, supra, grew out of a situation of a testator devising for charitable or benevolent purposes contingent upon the right to the use of a portion of the corpus needed for the support of the widow during her life which the widow subsequently waived, and it was held that no such uncertainty existed as of the date of the death of the testator as to require a disallowance of the deduction for taxation purposes.

By this review it will readily be seen that the determination of a deduction under the statute depends upon the facts and circumstances in each individual case where a condition is attached, and where the gift or bequest is based upon such condition, if the value of that contingent interest can be ascertained by reasonable methods or by recognized data as of the date of the death of a testator, the amount for deduction should be so determined and the deduction allowed. Here we are confronted with the task of fixing value on a contingency in connection with a church congregation raising a fund approximating $100,000 within a given time, which broadly would seem more speculative and uncertain than any of the examples set forth in the reviewed cases, except perhaps the St. Louis Trust Company Case, supra, in which the facts were somewhat analogous and the deduction denied.

But whether or not our conclusion is sound, in attempting to apply the rule of adjudicated cases to the instrument under consideration, there is a question peculiar to the situation presented which should be explored. Does the instrument of gift contain a condition precedent to the vesting of the title to the gift property in the church, or does the title become vested in the church at the date of its deposit subject to being subsequently defeated? If the gift is based upon a condition precedent, there being nothing in the record tending to show that the condition had been complied with at the date of the death of the testator, the fund would then remain as a part of his estate and as a consequence the deduction manifestly should not be allowed.

Conditions precedent are considered in 12 C.J. at page 407: "Condition Precedent. (Par. 1) A. In General. One which is to be performed before some right dependent thereon is performed; one which must be performed before the interest affected by it can vest; one that must happen before the estate dependent upon it can arise or be enlarged; one that must happen or be performed before the estate can vest or be enlarged. In contracts, a condition which calls for the performance of some act or the happening of some event after the terms of the con-

tract have been agreed upon, before the contract shall take effect; that is to say, the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs. It seems to be agreed that in regard to all conditions whether in a deed or will or in simple contracts, where the condition is in the nature of a consideration for the concession, its performance will be regarded as intended to precede the vesting of any right, and so a condition precedent. A condition precedent implies an existing fact, or state of facts, which must be so changed as to bring it into a condition desired. A condition which involves anything in the nature of a consideration is, in general, a condition precedent."

Mr. Justice Fuller in discussing the subject in New Orleans v. Texas & Pacific R. Co., 171 U.S. 312, at page 334, 18 S.Ct. 875, 883, 43 L.Ed. 178, says: "Where the undertaking on one side is in terms a condition to the stipulation on the other,—that is, where the contract provides for the performance of some act, or the happening of some event, and the obligations of the contract are made to depend on such performance or happening,—the conditions are conditions precedent. The reason and sense of the contemplated transaction, as it must have been understood by the parties and is to be collected from the whole contract, determine whether this is so or not; or it may be determined from the nature of the acts to be done, and the order in which they must necessarily precede and follow each other in the progress of performance."

Fairly in line with the holding of many courts, this statement is found in the case of Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 138, 67 L.R.A. 571, 110 Am. St.Rep. 963: "Conditions precedent are to be strictly complied with. Such a condition is one that must happen or be performed before the estate dependent upon it can arise or be enlarged, while a condition subsequent defeats the estate in case it does not happen or is not performed. In determining whether a particular provision amounts to a condition or not, the rule is that the intention of the grantor governs. Such intention is to be gathered from the whole instrument and the existing facts. The authorities lay down the principle that whether a condition is precedent or subsequent depends upon the intent of the parties, as collected from the whole contract, whatever the order in which they are found, or the manner in which they are expressed, although certain words are customary when a condition rather than a covenant is intended."

Following the rule that what was meant by the transaction evidenced by the instrument of gift must be collected from that instrument, we find: That the donor expressed himself as willing to contribute one-half of the cost of the structure upon the condition that the other one-half would be obtained by donations or pledges; that the $100,000 was delivered to the bank as agent of the donee to be held for the church, but subject to the condition expressed in the instrument; that only such amount of the $100,000 should be given to the church as should equal one-half the cost of the structure and that any amount remaining should be paid by the bank to the joint trust estate; that in the event the structure should not be started within fifteen months from the date of the instrument and in case the conditions shall not have been performed within that time, then the entire sum should be turned over to the joint trust estate; that such structure should not be commenced except upon the express condition that the funds necessary shall have been raised to insure its completion; that the gift was made available when the church should certify to the bank in writing that its necessary one-half had been raised in compliance with the terms of the gift instrument; that the gift is intended as a present gift but the delivery is to be completed upon the conditions recited; that the right was left to the bank to pass upon the financial responsibility of pledgors or promisors and to accept or refuse the same; that the donor reserved the right to receive interest or earnings coming from the funds during the time that such funds should not be actually available for the purposes expressed in the instrument; and that the cost of the structure, including the value of the real estate, should not be less than $150,000.

We think that when fairly analyzed this gift was based upon conditions precedent, in full harmony with the definitions to which reference has heretofore been made. There is no evidence in this record, even were it persuasive, that prior

to the death of Case there had been any acceptance of the gift on the part of the donee, nor that the church had at the time of his death certified to the bank its compliance with the conditions of the instrument so as to make the gift available. The gift being based upon a condition precedent the requirements of which had not been complied with at the time of the death of the donor, it cannot be said that at that time the fund was not a part of his estate. This view would likewise seem to be in complete harmony with the applicable Treasury Regulations.

The $100,000 fund must be held to have been a part of the estate of Case at the time of his death and as such taxable under the statutes invoked.

The judgment of the trial court will be reversed, and the case remanded, with instructions to modify the judgment by excluding a recovery of the proportionate tax upon this fund.