**HELVERING, Com'rs of Internal Revenue, v. UNION TRUST CO. OF DISTRICT OF COLUMBIA.**

**No. 4878.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 29, 1942.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

George E. Hamilton, Jr., and Leo N. McGuire, both of Washington, D. C. (George E. Hamilton, John J. Hamilton, and Henry R. Gower, all of Washington, D. C., on the brief), for respondent.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This petition for review involves a determination by the Commissioner of Internal Revenue of a deficiency in estate tax of $39,390.05 against the estate of Carolyn

402

G. Caughey, a former resident of the District of Columbia, who died on July 24, 1936. The Board of Tax Appeals set aside the determination and found a deficiency of only $34.21, holding that for the purpose of the tax the value of certain bequests in the will of the testatrix should be deducted from the value of the gross estate as bequests to a corporation organized and operated exclusively for charitable purposes. It is agreed that the legatee in question was such a corporation, but it is contended that the value of the bequests was not ascertainable at the death of the testatrix, and that they were conditioned upon the happening of events after her death, that might or might not occur, and therefore the deduction claimed by the executor of the estate should not have been allowed.

The statute and regulations involved are as follows:

Revenue Act of 1926, c. 27, 44 Stat. 9 U.S.C. Title 26, Sec. 412, 26 U.S.C.A. Int. Rev.Acts, page 232.

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

"(3) The amount of all bequests, legacies, devises, or transfers \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \*."

Treasury Regulations 80 (1934 Ed.)

"Art. 47. Conditional Bequests.—If the transfer is dependent upon the performance of some act or the happening of some event in order to become effective, it is necessary that the performance of the act or the occurrence of the event shall have taken place before the deduction can be allowed.

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

By her will dated June 18, 1936, the decedent devised and bequeathed the residue of her estate to a trustee, to pay the net income therefrom to her husband for life or until he should remarry, the payments to begin immediately upon her death, with direction to the trustee to contribute from the corpus of the estate additional sums for the proper care and comfort of the husband, should illness, accident or misfortune so require. The husband was 76 years of age at decedent's death and had a life expectancy of 6.11 years. In addition to the net income from the residuary estate, the husband was granted the exclusive use of the home property in Washington, where he has resided since his wife's death.

The will directed the trustee to convey the decedent's country home, called Rockwood Manor, to the National Girl Scouts, Inc., to be utilized as a character building center, two rooms and bath being reserved for the husband should he wish to go there and rest. The devise of this property was made subject to the condition that should the National Girl Scouts, Inc., abandon the property or close it so as not to be used as a means of character building or help to the cause, then the property should go to the officers or trustees of the Esther Chapter of the Eastern Star for their good work and use. Pursuant to this provision, Rockwood Manor was conveyed to National Girl Scouts, Inc., sometimes referred to herein as Girl Scouts, by the trustee by deed dated January 21, 1938, and has been occupied by that organization continuously since that time. No other assets of the estate have ever been transferred to the Girl Scouts.

The will further provided that upon the death or remarriage of the husband, all the other real estate of the decedent and the furniture in the Washington residence should be sold, and that one-half of the net proceeds of sale, together with one-half of the remaining personal property of the decedent, should be paid by the trustee to the Girl Scouts, if they should be still operating Rockwood Manor, the funds so paid over to them to be used in the development and improvement of the property and not in the paying of salaries to officers; and if at that time the Girl Scouts should have abandoned the property or were not using it for the character building purposes, then the trustee should pay over the fund to the Esther Chapter of the Eastern Star.

The trustee was directed to hold the remaining one-half of the net proceeds of sale and the remaining one-half of the personal property for the period of twenty

years after the death of the husband, and at the end of that period, to pay over the entire remaining estate to the Girl Scouts, if they should then be in possession of Rockwood Manor, or to the Esther Chapter of the Eastern Star if they be then in possession of Rockwood Manor.

It was stipulated that the National Girl Scouts, Inc., is a domestic corporation, organized and operated solely for one or more of the purposes enumerated in Section 303 (a)(3) of the Revenue Act of 1926, as amended, and that the Esther Chapter of the Eastern Star is not such an organization.

The residuary estate was valued at more than $310,000, and the income therefrom during the period of three and a half years after the decedent's death varied from $8,-000 to $10,000 per year, while the expenses of the husband approximated $4,000 per year. By the decision of the Board, three members dissenting, a deduction from the value of the gross estate was allowed for the value of Rockwood Manor in the amount of $38,375. plus the value at the date of decedent's death of the remainder of the estate after termination of the trust, computed by the use of mortality tables. The Commissioner does not dispute the deductibility of the value of Rockwood Manor, but contests the deductibility of the value of the remainder of the estate.

The rule of law as to the deductibility of such charitable bequests as are under consideration in this case is free from doubt. It is well established that a bequest to a corporation organized for charitable purposes is not deductible unless the bequest is unconditionally made and the amount is definitely ascertainable at the death of the decedent. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L. Ed. 667; Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793; First National Bank of Birmingham v. Snead, 5 Cir., 24 F.2d 186; Delaware Trust Co. v. Handy, D.C. Del., 53 F.2d 1042; St. Louis Union Trust Co. v. Burnet, 8 Cir., 59 F.2d 922; Gammons v. Hassett, 1 Cir., 121 F.2d 229; United States v. Fourth National Bank, 10 Cir., 83 F.2d 85 and cases cited.

It seems to be clear that the bequests now under consideration do not satisfy these requirements. It is noticeable, first of all, that the amount of that one-half of the residuary estate to be transferred to the legatee at the husband's death is somewhat uncertain, because the will directs that if illness, accident or misfortune should require more than the net income monthly for the proper care and comfort of the husband, the trustee shall contribute such additional sum from the corpus as will satisfy the need. It is suggested, not without reason, that the provision in the will for the use of the residence in Washington by the husband and the gift to him in addition of a substantial annual income greatly in excess of his needs reduces to a minimum the probability that any part of the corpus will ever be expended for his benefit. The decided cases indicate that the mere possession of power by a trustee under a will to use a part of the principal of a trust estate for the maintenance of the beneficiary of the life estate will not of itself destroy the deductibility of a charitable bequest of the remainder, if the amount of the corpus that may be so used is capable of being stated in definite terms of money, so that the amount of the remainder given to charity is fixed and therefore capable of deduction from the gross estate. A comparison of two of the cases which are at opposite extremes illustrates the application of the rule. In Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, the value of the residuary estate was held to be deductible although the will allowed the wife of the testator the use from the principal of any sum that might be necessary to suitably maintain her in the comfort to which she was accustomed. The court said (page 154 of 279 U.S., page 291 of 49 S.Ct., 73 L.Ed. 647): "* * * The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

On the other hand, it was held in Gammons v. Hassett, 1 Cir., 121 F.2d 229, that the value of the residuary estate was not deductible under a testamentary provision permitting the testator's wife to invade the corpus of the estate to the extent of so much of the principal thereof as the wife might at any time need or desire; and this

holding was made although the wife was 93 years of age at the death of the testator and the income from her own estate and from the trust estate under his will exceeded the amount required to maintain her customary standard of living.

■ If the permissible use of a part of the corpus of the trust estate to care. for the husband in case of emergency was the only source of uncertainty in the pending case, we should hesitate to hold that the bequests of the residue are not deductible for estate tax purposes. But there is additional uncertainty. One-half of the residue is to be delivered to the Girl Scouts at the death of the husband only upon the condition that Rockwood Manor is then being used by them for character building purposes. Whether the organization will have been able in the interval of uncertain length between the death of the wife and the death of the husband to maintain and use this valuable country place for the purposes indicated is by no means certain, especially as the testatrix made no provision for maintenance or operating expenses. Nor did she provide for the operating expenses necessarily to be incurred after her husband's death, since she directed that the funds to be paid to the Girl Scouts upon that event should be used "in the development and improvement of the property and not in the paying of salaries of officers"; and this requirement adds another uncertainty for no one can be sure that the corporation will be willing at that time to accept a gift so restricted and undertake to operate the place upon the lines laid down in the decedent's will.

Even more conjectural is the situation that will prevail twenty years after the husband's death when the second half of the residue is to be paid under certain conditions to the charitable corporation. Who can say that the Girl Scouts will then be in possession of the country place? If, in the meantime, the corporation shall have abandoned the property or shall have failed to use it as a means of character building or as a help to the cause, then under the will title will have passed to the Esther Chapter of the Eastern Star for their work; and if the property is in its possession, it will be entitled to a transfer of the entire remaining estate. Obviously the testatrix herself, despite her great interest in the Girl Scout movement, was uncertain what action the controlling officials would take in regard to her bequests, conditioned as they were.

We find ourselves in like doubt, and as the Esther Chapter of the Eastern Star is not such a corporation as is described in Section 303 of the Act, we are obliged to hold that the legacies of the residue are not deductible for the purposes of the tax.

■ We think that these considerations must control the decision of the pending case rather than the nature of the interest in the property, as vested or contingent, derived by the Girl Scouts, Inc., under the will, or the nature of the conditions, precedent or subsequent, upon which the bequests depended. See Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; 28 Va.Law Rev. 387.

The decision of the Board of Tax Appeals is reversed.