ESTATE OF JOHN C. POLSTER, DECEASED, MILTON A. POLSTER, AND J. PAUL ROCKLIN, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66617. Filed January 28, 1959.

*Morris Fedder, Esq.*, and *J. Paul Rocklin, Esq.*, for the petitioners. *John W. Holt, Esq.*, and *William Schwerdtfeger, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge:* The question to be decided is whether the alleged value at the time of the decedent's death of the bequest to the Pentecostal Holiness Church, Inc., is deductible from the value of the gross estate under section 812(d) of the 1939 Code.[1] Allowance of the claimed deduction was denied by the respondent pursuant to section 81.46 of Regulations 105 which is as follows:

Sec. 81.46 Conditional bequests.—

If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. If an estate or interest

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers \* \* \* !to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*

has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable.

The executors deducted in the estate tax return as the present value of the charitable bequest $116,637.21. Due to respondent's uncontested adjustments which have increased the value of the gross estate, the present value of the charitable bequest is computed by the executors in the amount of $122,211, for which deduction is claimed.

Whether or not the decedent's executors are entitled to a deduction of $122,211 for a charitable bequest depends upon whether the bequest set forth in paragraph (c) of the third article of the will satisfies the requirements of section 812(d). In considering the issue, the provisions of section 81.46 of Regulations 105, set forth above, must be taken into account, for the regulation implements the statutory provisions, it has been regarded as a valid interpretation of the statute, and it should not be disregarded. *Commissioner* v. *Sternberger's Estate*, 348 U.S. 189. The principal meaning of section 81.46 of the regulations is stated in the case of *Sternberger's Estate, supra*, to be as follows:

The predecessor of § 81.46 confined charitable deductions to outright, unconditional bequests to charity. It expressly excluded deductions for charitable bequests that were subject to conditions, either precedent or subsequent. While it encouraged assured bequests to charity, it offered no deductions for bequests that might never reach charity. Subsequent amendments have clarified and not changed that principle. Section 81.46(a) today yields to no condition unless the possibility that charity will not take is "negligible" or "highly improbable." * * *

Within the framework of the first part of section 81.46 of Regulations 105, it cannot be said that a deduction can never be allowed under section 812(d) of the 1939 Code for a bequest or transfer which in fact is conditional. However, where the bequest is conditional the inquiry must be whether the chance that the charity will not take is or is not so remote as to be negligible. Furthermore, the Supreme Court in the *Sternberger* case has rejected the view that the applicable regulations permit proportional deductions. As was observed in *United States* v. *Dean*, 224 F. 2d 26, 29:

The Court construed § 81.46 * * * as taking not a proportional but an all or nothing approach to the problem of deductions on account of contingent bequests to charity. Thus the section either denies any deduction at all for a contingent bequest to charity, or else it permits the deduction of the present value of the entire contingent bequest, allowing the latter whenever "the possibility that charity will not take is so remote as to be negligible."

One of the respondent's contentions is that the bequest in dispute is clearly a conditional bequest, the enjoyment of which is contingent upon a devisee's putting up 75 per cent of the cost of a church structure (including the cost of the site of the structure, if that is to be ac-

quired). Thus, the respondent's contention falls within the first sentence of section 81.46. The petitioners, on the other hand, argue that at the time of the decedent's death the interest of the charity in the corpus of the residuary trust estate vested in the charity, that the possibility that such interest would be defeated by the performance of some act or the happening of some event appeared to be highly improbable at the time of the decedent's death, and that, therefore, deduction is allowable. Petitioners' contention lies within the second sentence of section 81.46.

The respective contentions of the parties, above noted, appear to invite our undertaking to base our conclusions upon a determination of whether the charity involved here was given, under the decedent's will, a contingent or a vested remainder. At the outset we should make clear that in our opinion decision of the issue does not necessarily turn upon whether the charity received a contingent or a vested remainder. We recognize the admonition in *Klein* v. *United States*, 283 U.S. 231, 234, which was reiterated in *Helvering* v. *Hallock*, 309 U.S. 106, that in the field of Federal taxation "[n]othing is to be gained by multiplying words in respect of the various niceties of * * * the law of contingent and vested remainders." General and practical considerations may control decision of the issue, depending upon the facts of each particular case, rather than the nature of the interest embraced in a bequest, either vested or contingent. See, for example, *Helvering* v. *Union Trust Co.*, 125 F. 2d 401, 404. As was said in *Pennsylvania Co. For Insurances, Etc.* v. *Brown*, 6 F. Supp. 582, affd. 70 F. 2d 269—

Questions of vested or contingent interests may be of the greatest importance in determining the alienability of the remainder or its liability to be subjected to the claims of creditors, but we are here construing a taxing statute and determining whether or not a deduction is allowable. * * * there is just as much uncertainty of amount involved in a vested remainder subject to being divested as in one which is contingent.

Under the facts and circumstances of this case, it is necessary, if not preferable, to consider broadly whether, as of the time of the decedent's death, the chances that a charity would not take all of the decedent's bequest were "negligible" or "highly improbable."

It is necessary to ascertain first who is the devisee of the bequest, and whether there is one or several. It is provided, in part, in paragraph (c) of the third article of the will, that upon the death of the last surviving child of the decedent, the residuary trust is to be held in further trust for the purchase or construction of church buildings and structures, including the locations and land, "for the Pentecostal Holiness Church, Inc. in the City of Baltimore and in the State of Maryland." The petitioners take the position that the bequest of the decedent was made to the churches in the State of Maryland, as a class, belonging to The Maryland Conference of the Pentecostal Holiness

Church. We understand their contention to be, further, that the bequest was made to such churches, both those in existence at the time of the decedent's death and those to come into existence thereafter. Thus, on brief, the petitioners refer to the growth in the membership since 1952 of all of the Pentecostal Churches in the State of Maryland, and they refer, also, to "The Pentecostal Holiness Church, Inc., which has its headquarters in Franklin Springs, Georgia." At the trial, it was made clear that the respondent's position is that the provisions of the pertinent part of the will make the beneficiary of the entire bequest an individual and separate church, namely, the Pentecostal Holiness Church, Inc., in the city of Baltimore and in the State of Maryland. Respondent adheres to that position.

Under section 812(d), a deduction is allowable only if a bequest or transfer is made to or for the use of a "corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes." The petitioners' claim for a deduction for a charitable bequest must fail at the outset if the petitioners fail to prove that the beneficiary of the bequest is a corporation. With respect to this point, we turn to a discussion of the evidence.

There is in evidence the minutes of The Maryland Conference of the Pentecostal Holiness Church convened at the conference campground near Frostburg, Maryland, on July 12, 1952, and a letter of the superintendent of The Maryland Conference, Harrison H. Valentine. These represent official documents of the church organization. In addition, the record contains testimony of Valentine, who, also, was the pastor of the Pentecostal Holiness Church, Inc., located at 1249 East North Avenue, Baltimore, from July 1, 1945, until sometime in the latter part of 1954. The evidence, taken as a whole, shows as follows: (1) The correct title of the religious sect, or denomination, having a common faith and form of worship and discipline, is the Pentecostal Holiness Church. That sect, or denomination, has its national headquarters in Franklin Springs, Georgia. Its title, or name, is not the Pentecostal Holiness Church, Inc. (2) The national organization of this denomination is not incorporated; neither is The Maryland Conference. (3) The national denomination is a federation of individual churches having a common faith who have agreed to adhere to a common discipline and to conduct the operations of the individual churches according to certain rules. (4) The Maryland Conference is a local unincorporated organization within the national federation which represents the individual churches in a district, which comprises several States, including Maryland. Individual churches must be formally admitted to and enrolled in the conference. (5) Some, but not all, of the individual churches are incorporated. (6) The Pentecostal Holiness Church, Inc., 1249 East

North Avenue, Baltimore 2, Maryland, is a corporation; it was the only Pentecostal Holiness Church in Baltimore which, at the time of the decedent's death, was enrolled in The Maryland Conference; it now is the only such church in Baltimore which is enrolled in the conference. (7) Each individual church is self-supporting. Each one relies upon the contributions of its congregation. None receives financial aid or contributions from the conference to which it belongs, or from the national organization. Each church acquires and purchases its own church property by using its own funds and, if necessary, funds borrowed from lending institutions. (8) The ruling given by the Commissioner of Internal Revenue by letter dated July 26, 1957, granted exemption from Federal income tax to the individual incorporated church located at 1249 East North Avenue, Baltimore 2, Maryland. That ruling was not a "blanket" ruling covering either The Maryland Conference or the national organization, and none could have been made because neither the conference nor the national organization is incorporated. Part of the letter ruling states that bequests to and for the use of the above-described individual church are deductible in computing the value of the taxable estate of a decedent for Federal estate tax purposes. Such ruling applies only to the incorporated church located at 1249 East North Avenue, Baltimore.

The dispute about the beneficiary designated in paragraph (c) of the third article of the will presents the problem whether the provisions of paragraph (c) are ambiguous. Evidence showing what was the intention of the testator is needed to determine properly this question. There is no evidence before us which establishes that the decedent intended to make a bequest either to The Maryland Conference of Pentecostal Holiness Churches, or to all of the Pentecostal Holiness Churches in Maryland, in existence, or in existence and to come into existence. Valentine testified that the decedent desired to provide funds for churches in Maryland, but not outside of that State. Giving whatever weight properly may be accorded to this testimony, it is not entirely helpful, because it might be possible for the Baltimore church on East North Avenue to acquire and construct church buildings, and the land therefor, at places in Maryland other than Baltimore. However, there is no evidence here that under the rules of The Maryland Conference and of the national organization an individual church is allowed to have various and sundry church structures located in different cities and towns.

If it was the intention of the testator to make a bequest to the several and various, independent churches in the State of Maryland, the petitioners would be entitled to a deduction under section 812(d), if all other requirements were satisfied (which we do not now decide,

at this point), only for a bequest to corporations. The evidence does not show that the two other churches in Maryland which were in existence at the time of decedent's death, the churches in Cumberland and Lonaconing, were incorporated, or that the two churches established in 1957, in Silver Spring and Daniels, were incorporated. As far as the record shows, only the East North Avenue church in Baltimore was incorporated.

The petitioners have taken the position that the bequest was made to all of the churches in Maryland, as a class, in existence and to be established. The deduction claimed under section 812(d) would not be allowable under this broad contention because the petitioners have failed to show that all of the churches in such class have qualified, or would qualify, as the type of corporation specified in section 812(d). With respect to this condition which is in the statutory provision itself, and giving consideration to section 81.46 of the regulations, we cannot say that as of the date of decedent's death, the possibility that church corporations would not take the bequest was "negligible" or "highly improbable."

The decedent's will named a beneficiary which was in existence at the time of his death, the Pentecostal Holiness Church, Inc., in the city of Baltimore. It is, of course, also in the State of Maryland. Legal draftsmen sometimes refer to a location in terms of both the city and State where it is located. That church is a corporation which meets the specifications contained in section 812(d). At the very least, the bequest was made to the above-named incorporated church. Absent adequate evidence to which full weight can be given, and on the entire record before us, we are obliged to construe the pertinent provisions in the will as constituting a bequest to the church in Baltimore at 1249 East North Avenue. We recognize that by the time any distribution can be made under paragraph (c) by the trustees of the residuary trust, which will be 27 years after the decedent's death, all of the churches in Maryland might become incorporated, but whether each one would qualify under section 812(d) is speculative and uncertain, for to so qualify a corporation must not only be organized and operated exclusively for charitable purposes but, also, no part of its earnings can inure to the benefit of any individual, and no substantial part of its activities may be carrying on propaganda, or otherwise attempting, to influence legislation.

The chief question is whether the decedent's bequest in its entirety will ever reach a charity. At the outset, it is concluded that under the provisions of paragraph (c) of the third article of the will, the trustees are restricted as to the amount of each and every distribution out of the trust corpus. The amount of each distribution may

not exceed 25 per cent of the cost of every construction, building, or purchase. This being true, the prospective distributee must provide at least 75 per cent of such cost. We must apply practical considerations in our determination of the issue and they dictate the further conclusion that the trustees, in fulfilling their fiduciary duties and obligations and in preventing waste of the trust funds and frustration of the testator's intent, would necessarily be obligated to ascertain, before they made any distribution of trust funds, that a project involving the purchase or construction of a church building or of the site for a church structure would be carried out and completed. It would be incumbent on the trustees to determine that a prospective distributee actually had obtained a firm commitment from a lending institution for any loan needed to provide either the entire 75 per cent share of costs or such amount as would enable such distributee to complete its 75 per cent share. We think it is reasonable, therefore, to regard the terms of the decedent's bequest as containing the condition that before a distribution of trust funds could be made by the trustees to a distributee who applied for funds, such applicant would have to establish that 75 per cent of the cost of a project was in fact available. The applicant's obligation to establish that fact constitutes a contingency upon which a distribution of trust funds would depend. Cf. *United States* v. *Fourth Nat. Bank in Wichita, Kan.*, 83 F. 2d 85, 91. The inability on the applicant's part to provide 75 per cent of cost would prevent a distribution by the trustees of an amount equal to 25 per cent of cost.

The next inquiry must be into the matter of the total amount which the trustees of the residuary trust will have on hand after 27 years from the time of the decedent's death, which is the agreed period during which there will exist the life interests in annuities to be provided by the trust estate. The petitioners have not taken any exception to the respondent's computation of that amount, which he has calculated will be $254,192.04. This is the total amount of the trust estate, after the life estates, which will be available for distribution. Petitioners have not shown that such fund will be a lesser amount. In order that a fund of $254,192.04 may be fully distributed, a prospective distributee, or distributees, must be able to provide the total amount of $762,576.12. As was pointed out in *United States* v. *Dean, supra*, section 81.46 of the regulations has been construed by the Supreme Court to permit only a deduction of the present value of the entire contingent bequest, and no less, provided the possibility that charity will not take all of the bequest is either "negligible" or "highly improbable." We must determine whether, on the above basis, the claimed deduction is allowable.

Where a bequest is not outright in the sense of being wholly unconditional, there are various difficulties which must be dealt with in determining whether a deduction therefor is allowable, and among them are these: Is the contingency, upon the happening of which the bequest is to go to the charitable purpose, such that the supposed bequest may never become effective in possession or enjoyment so that the bequest is too uncertain, contingent, and remote to be taken into account in determining the value of the net estate for the purpose of the estate tax? Cf. *Mitchell* v. *United States*, 63 Ct. Cl. 613, affirmed sub nom. *Humes* v. *United States*, 276 U.S. 487. Is the contingency, not resolved at the testator's death, one which permits computation of the present worth of deferred uses with certainty upon some reasonable basis without resorting to completely speculative factors? See *Humes* v. *United States, supra; Merchants Bank* v. *Commissioner*, 320 U.S. 256.

There is set forth in the Findings of Fact all of the facts pertaining to the financial condition of each of the three churches which were located in Maryland at the time of the decedent's death. Assuming, *arguendo*, that all of these churches are corporations within the scope of section 812(d), and assuming that in 27 years they will own their property outright, their known assets had a total value of $64,500 at the time of the decedent's death. The evidence shows, further, that in their fiscal year 1952, the expenditures of each church in Maryland closely approximated total receipts, leaving an unexpended balance of current receipts, for the three churches, of only about $2,925. If we add to that some figure for mortgage payments made in 1952 (which we must estimate for the churches in Cumberland and Lonaconing) on the assumption that no mortgage payments will be owing in 27 years, such as $2,400, the annual surplus over current expenses for the three churches is about $5,325. If we assume, *arguendo*, that the three churches should save such estimated surplus for 27 years, then their savings would amount to about $143,748, to which we can add the total value of their church properties (without any allowance for depreciation, however), namely, $64,500, to arrive at a total worth of around $208,248 at the end of 27 years. Can it be assumed, on the basis of the record before us, that the charity designated in the decedent's will can meet the condition of providing $762,576, in order to receive distribution of $254,192?

Petitioners have the burden of establishing that the Commissioner's denial of their claimed deduction is in error. Their burden includes proving that the possibility that the charity will not take all of the contingent bequest is either "negligible" or "highly improbable." Upon consideration of all of the evidence, our conclusion is that they have failed in their burden of proof.

The factors upon which petitioners rely in support of their contention that the chances that charity will not take all of the bequest is either "negligible" or "highly improbable" are as follows: First, they assume that the charity to which the bequest was made is a multiplicity of incorporated Pentecostal Holiness Churches to be established in Maryland which will satisfy the requirements of section 812(d). Next, it is assumed that the congregations of such churches will increase, bringing a corresponding increase in the funds of the churches. It is assumed that the churches will be able to borrow from lending institutions amounts which, when added to their accumulated savings, will be sufficient to provide $762,576, 75 per cent of the cost of structures. It is also assumed that the churches will certainly acquire, purchase, or construct properties having a total cost of $1,016,768 (of which amount $254,192 is 25 per cent).

Petitioners' assumptions are speculative and wholly uncertain. Cf. *Delaware Trust Co.* v. *Handy*, 53 F. 2d 1042, 1049; *St. Louis Union Trust Co.* v. *Burnet*, 59 F. 2d 922, 926; *Helvering* v. *Union Trust Co.*, *supra; Churchill* v. *United States*, 68 F. Supp. 267. Furthermore, certain principles must be taken into account. For example: A settlor may make a gift to charity upon a condition, and unless a certain event happens or a certain act is performed, the gift to charity does not vest and the settlor or his estate remains the owner of the property. 2A Bogert, Trusts and Trustees sec. 420. A testator can postpone the period of vesting by making it depend upon a contingency and if he does so, the estate will not vest until the happening of such contingency. *Cherbonnier* v. *Goodwin*, 79 Md. 55, 58, 28 Atl. 894, 895 (1894). A gift to charity at a remote date, following gifts to private persons, is subject to the rule against perpetuities. 2 Bogert, Trusts and Trustees sec. 345p. The rule has been defined in Gray, Rule Against Perpetuities sec. 201 (4th ed.) as: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." This rule has long been applied in Maryland in instances of private gifts with a gift over to charity. See *Missionary Society* v. *Humphreys*, 91 Md. 131, 46 Atl. 320 (1900).

Since there is no time limit fixed in the decedent's will as to when charity can fulfill the conditions which are incumbent on a charity, there exists here the possibility that the prescribed conditions will not be fulfilled within the period fixed by the rule against perpetuities. The bequest may violate the rule against perpetuities and, therefore, be void.

A further contention of the petitioners is that, in effect, a ruling under Maryland law has been made that there was an effective vesting in charity of an interest in the remainder because the executors' first administration account was approved by the Orphans' Court in which

no inheritance, or estate, tax of Maryland was reported as due for the bequest to charity. The approval of an uncontested administration account of the executors by the Orphans' Court does not constitute a judicial determination under the law of Maryland relating to the vesting of any interest in a charity at the time of the decedent's death, or of the validity of the charitable bequest, which is binding upon this Court, or controlling, in deciding the issue which here involves application of a provision of the Federal estate tax statutes. *Mississippi Valley Trust Co.* v. *Commissioner*, 72 F. 2d 197, 200, certiorari denied 293 U.S. 604; *Burnet* v. *Harmel*, 287 U.S. 103, 110.

Under the facts and circumstances of this case, there is no reliable criteria upon which it can be held that the possibility that charity will not take all or some determinable part of the bequest is merely negligible or highly improbable. Cf. *Estate of Jean S. Alexander*, 25 T.C. 600; *Estate of George M. Moffett*, 31 T.C. 541; *Newton Trust Co.* v. *Commissioner*, 160 F. 2d 175, 181, affirming 5 T.C. 1304; *Henslee* v. *Union Planters Bank*, 335 U.S. 595, 598–600. Our conclusion is that the possibility that charity will not take the bequest is not so remote as to be negligible, and that at the time of the decedent's death the defeat of an interest in the remainder was not highly improbable. Therefore, the petitioners are not entitled to the claimed deduction under section 812(d).

*Decision will be entered for the respondent.*